WINTERS, *by his next friend*, v. THE KANSAS CITY CABLE RAILWAY COMPANY, *Appellant.*

1. **Negligence:** CABLE RAILWAY : USE OF STREETS. A cable railway company, operating dangerous machinery at a rapid speed on and along the public streets of a city, must know, and, in law, is bound to know, that men, women and children have an equal right to the use of the highway, and will be upon it.

2. ———: ———: ———. It is the duty of the company's servants to be on the lookout and to take all reasonable measures to avoid injuries to persons on the streets.

3. ———: ———: APPROACHING CURVE IN STREET. It is not, as a matter of law, sufficient care on the part of the gripman, when approaching a curve in the street, to ring the bell, and, having seen that the way was clear in front, to go ahead without thereafter looking to the right or left.

| 99 | 509 |
| 99 | 405 |
| 99 | 509 |
| 113 | 536 |
| 115 | 606 |
| 99 | 509 |
| 56a | 53 |
| 99 | 509 |
| 121 | 214 |
| 99 | 509 |
| 163 | 654 |
| 99 | 509 |
| 91a | 376 |
| 99 | 509 |
| 99a | 8324 |
| 99 | 509 |
| 101a | 1 60 |

4.   ———— : QUESTION OF FACT : PRACTICE IN SUPREME COURT.   Where
the question of negligence, as in this case, is one of fact, the
supreme court will, so far as the demurrer to the evidence is con-
cerned, only look to see if there is sufficient evidence to support the
verdict.

5.   ———— : CHILD RUNNING IN FRONT OF CAR.   Where the child killed
ran in front of the car, and the gripman was free from negligence,
there ought to be no recovery.

6.   Answer, Admissions in.   The ownership of the cars and the
operation of the road by defendant *held* to be admitted by the
answer in this case.

7.   Child, Action by for Negligent Injury : NEGLIGENCE OF
MOTHER.   The negligence of a mother in permitting her child,
unattended by a person of mature years, to go upon a public street
where it was run against and injured by the cable car of the defend-
ant, is no defense to an action by the child for its injuries.  (*Boland
v. Railroad*, 36 Mo. 484, approved; *Stillson v. Railroad*, 67 Mo. 671,
distinguished.)

8.   ———— : ACTION BY PARENT: NEGLIGENCE.   Where suit for such
injuries is brought by the parent, all the circumstances are to be
taken into account, and, if the parent took as much care of the
child as reasonably prudent persons of the same condition in life
and in the same situation ordinarily do, the parent cannot be suc-
cessfully charged with negligence to defeat the action.

9.   ———— : NEGLIGENCE OF PARENT.   The negligence of the parent to
defeat his action must be the proximate cause of the injury.

*Appeal from Jackson Circuit Court.* — HON.   T.   A.
GILL, Judge.

AFFIRMED.

*Johnson & Lucas* for appellant.

(1)   Defendant's demurrer ought to have been sus-
tained.   (*a*)   There is no evidence that the servants of
defendant saw or could have seen plaintiff in time to
stop train and avoid injury.   Wood's Railway Law, pp.
1275, 1276, 1277 and 1278; *Jackson v. Hardin*, 83 Mo.
186; *Landis v. Hamilton*, 77 Mo. 554; *Powell v. Rail-
road*, 76 Mo. 84; *Boland v. Railroad*, 36 Mo. 484.
(*b*)   There was no evidence offered that defendant was

operating the road at the time of the accident. *Gilbert v. Railroad*, 23 Mo. App. 66. (2) Plaintiff's first instruction should have been refused. (*a*) It assumes that the defendant was operating the road, and that the car which ran over the plaintiff was defendant's car. *Stoher v. Railroad*, 91 Mo. 517 and 518; *Raysdon v. Trumbo*, 52 Mo. 35; *Birtwhistle v. Woodward*, 95 Mo. 113; *Peck v. Ritchey*, 66 Mo. 121; *Wilkerson v. Thompson*, 82 Mo. 328. (*b*) There was no evidence that the gripman saw, or by the exercise of proper care could have seen, the plaintiff. *Bowen v. Railroad*, 75 Mo. 426; *Harty v. Railroad*, 95 Mo. 368. The second instruction given is erroneous. It ignores the question of safety to passengers on the car. *Young v. Railroad*, 79 Mo. 336; *Grant v. Railroad*, 25 Mo. App. 231. And there was no evidence that defendant's servants were not in readiness to stop the train on discovering any person in a dangerous situation. *Harty v. Railroad*, 95 Mo. 368. There was no evidence that defendant's servants in charge of its trains at that place did not keep a lookout to see if persons were passing, etc. *Railroad v. Herrite*, 4 Am. and Eng. Ry. Cases, 548. Plaintiff's third instruction ought not to have been given. The negligence of the parent or guardian will be imputed to the child. *Hartfield v. Roher*, 21 Wend. [N. Y.] 615; *Mangum v. Railroad*, 38 N. Y. 455; *Cadmus v. St. Louis Bridge Co.*, 15 Mo. App. 86; *Stillson v. Railroad*, 67 Mo. 671. And for that reason defendant's second instruction ought to have been given. Cases above cited. Plaintiff's fourth instruction assumes that defendant was operating the road; that it was defendant's employes that were in charge of the cars. This was a disputed fact, and should have been submitted to the jury. *Glass v. Gelvin*, 80 Mo. 297; *Grier v. Packer*, 85 Mo. 107; *Raysdon v. Trumbo*, 52 Mo. 35; *Maxwell v. Railroad*, 85 Mo. 96; *Dowling v. Allen & Co.*, 88 Mo. 293. It assumes that plaintiff was injured by the car

of defendant. This was affirmed by the petition and denied by the answer, and was an issuable fact. It refers the jury to the pleadings to determine the issues in the case. *McGinniss v. Railroad*, 21 Mo. App. 399. Plaintiff's fifth instruction ought to have been refused, not given. It is too general in its character, and tells the jury that plaintiff can recover if through the carelessness or negligence of defendant's employes it inflicted upon the plaintiff the injury mentioned in the petition. It does not limit the recovery to the negligent act complained of. *Gurley v. Railroad*, 93 Mo. 450; *Glass v. Gelvin, supra; Waddingham v. Hulett*, 92 Mo. 528. The court should have stated the issues, and not referred the jury to the pleadings to ascertain them. *Biegan v. Railroad*, 63 Iowa, 464; *Fitzgerald v. McCarty*, 55 Iowa, 702. Defendant's sixth instruction ought to have been given. Under the pleadings and evidence the plaintiff could not recover. (*a*) The allegation in the petition is, that defendant then and there carelessly and negligently ran one of its said cars upon and over plaintiff. There is no evidence of carelessness or negligence on the part of defendant. (*b*) There is no evidence that defendant ran one of its cars upon and over plaintiff. (*c*) The petition does not state facts sufficient to constitute a cause of action, and defendant's instruction ought to have been given. *Gurley v. Railroad*, 93 Mo. 450. (3) Defendant's motion for a new trial ought to have been sustained. The verdict is absolutely without evidence to support it. *Spooner v. Railroad*, 23 Mo. App. 403; *Taylor v. Fox*, 16 Mo. App. 527.

*Jewell & Thompson* for respondent.

(1) The defendant should have offered no testimony, if he wished to stand upon his demurrer. *Kelly v. Railroad*, 75 Mo. 141; *Cadmus v. Co.*, 15 Mo. App. 94. In

passing upon this instruction every inference must be in favor of plaintiff. *Buesching v. Gaslight Co.*, 73 Mo. 219 ; *Frick v. Railroad*, 75 Mo. 601. (2) Appellant's instructions numbers 2, 3 and 4 assume' the defendant was operating the road. So does defendant's answer. *Barr v. Armstrong*, 57 Mo. 589. The second instruction given does not ignore the safety of passengers. It only required the cars to be stopped as quickly as the same could reasonably be done by the exercise of ordinary care. If cars were stopped regardless of consequences to passengers, it would not be reasonably done. (3) Neither giving plaintiff's third instruction nor refusing defendant's second instruction was erroneous. We maintain the doctrine of imputed negligence in this state to be that mere acts of omission on the part of the parent, such as permitting the child to go upon the street alone or improperly attended is no defense to an action by the child for injuries negligently inflicted upon it ; that negligence of parent is only imputed to the child when the parent is personally present directing the movements of the child. *Boland v. Railroad*, 36 Mo. 490, repudiating doctrine of *Hartfield v. Roper*, cited by appellant, and endorsing doctrine of Judge REDFIELD in *Robinson v. Cone*, 22 Vt. 213 ; *Stillson v. Railroad*, 67 Mo. 671 ; *Railroad v. Snyder*, 18 Ohio St. 670 ; *Railroad v. Schuster*, 113 Pa. St. 412 ; *Battishill v. Humphrey*, 31 N. W. Rep. (Mich.); Cooley on Torts, p. 680. Even though plaintiff's third instruction had been refused, and defendant's second instruction given, as appellants contend should have been done, the jury would still have found for plaintiff, and it would have been their duty so to do, believing, as their special verdict shows they did believe, that defendant's servants by the exercise of ordinary care after plaintiff's situation was discovered could have avoided the injury and could have seen his danger in time to save him. *Donohue v. Railroad*, 91 Mo. 363 ; *Summer v. Rodgers*, 90

Mo. 323; *Kelly v. Railroad*, 75 Mo. 140; *Guenther v. Railroad*, 95 Mo. 295; *Frick v. Railroad*, 75 Mo. 612. See comments on second instruction asked for defendant. (4) Defendant's second instruction on any view of the law of imputed negligence was still erroneous, because it forbade a verdict for plaintiff, even though the jury might believe, as their special verdict shows they did, that defendant's servants, after his situation was discovered, failed to use proper care for his safety. Defendant's gripman having seen plaintiff on the highway, as he said he did, plaintiff is not precluded from his redress if injured by defendant's negligence, even though, through the negligence of his parent, he may have been there alone or improperly attended. *Robinson v. Cone*, 22 Vt. 213, approved in *Boland v. Railroad*, 36 Mo. 491. (5) *First.* It confined the jury to the injury complained of, viz., running of defendant's cars over plaintiff. *Second.* Defendant's citations only go to this extent, that the recovery cannot be for another negligent act than the one complained of. No other negligent act than the one complained of was introduced into the case, and the special findings of the jury show their verdict to have been based on this. See similar instructions given by the court in *Frick v. Railroad*, 75 Mo. 607, first and second instructions by the court approved. *Third.* This instruction does not refer the jury to the pleadings to ascertain the issues. There was no issue made on the allegation that defendant ran its cars over plaintiff; this is admitted by defendant's second defense. Citation last above. The petition is sufficient. *Schneider v. Railroad*, 75 Mo. 296.

BLACK, J.—One of the defendant's cable cars ran upon the plaintiff, a boy three years of age, at the crossing of Ninth street and Grand avenue, in the City of Kansas, crushing one of his legs, so that amputation became necessary. Hence, this suit by his next friend for damages.

The refusal of the court to give defendant's instruction, in the nature of a demurrer to the evidence, makes it necessary to set out the substance of the evidence on the one side and the other. Ninth street runs east and west and Grand avenue north and south. The train of cars was going east on Ninth street, and thence around the curve, at the crossing of the two streets, and north on Grand avenue. The accident occurred just as the front, or grip, car passed around and cleared the curve. The car, in approaching the curve, ascended a grade, but the surface of the streets, at the crossing, could be seen by the gripman for one hundred or more feet before he reached it. There were no obstructions on the streets. The gripcar was open at both ends, but closed at the sides for a space of about two feet from the floor, and above that there were glass windows. The gripman's position placed him in the middle of the car.

The boy and his sister, ten years of age, went to a building about a block distant from the crossing, by permission of their mother, to gather kindling wood. She lived close to the same place, and says she let them go because she was not able to buy kindling. The children crossed over the tracks from the south to the north side of Ninth street, and thence went east on the sidewalk to Grand avenue, and thence eastward across that street towards their home. The car ran against the boy at a point about thirty-five or thirty-seven feet east of the west curb of Grand avenue.

Of two witnesses, who were nearly a block distant, one of them testified : "When I first saw the boy he was three or four feet from the lamp post at the northwest corner of the streets. He ran straight from that point until the car hit him. It did not seem to last longer than the snap of the finger." The other witness says : "The boy was trying to cross the street; there was a little girl ahead of him; the last I saw of her she was going." Mr. Vincent, who was twenty or thirty feet distant, says he first saw the boy when near the west

track; that he heard some one, having a child's voice, call, but did not see the little girl until after the car struck the boy. This witness and another person who was in the car, and saw the boy when within two feet of the car say he was toddling along about as a boy of his age would move. Other evidence shows that the gripman was looking to the front; that his attention was called to the presence of the boy, but too late to enable him to stop the car in time to avoid the injury.

Mr. Davis testified for the defendant: "I was on the north side of the gripcar, about three seats from the front. I saw the girl and boy starting over the crossing; just as we swung up on top of the hill, the girl stopped and turned her head and looked at us. As the gripcar came around the curve, she ran back, screaming, and threw up her hands, leaving the child by himself; he went in front of the train. At the time the girl turned and ran back, she was three or four feet from the track; the gripman then had no time to stop the car. I first saw the child when about one step from the sidewalk; he had a pail, or little bundle in his hand."

The gripman testified: "I saw the child just as I was about to strike it; it was not more than a foot from the car; I stopped the car within about six feet after I saw the child." On cross-examination he says: "When I first saw the child it was at the lamp post on the sidewalk. There was a young lady close to him, a rod from him; saw no children near the boy. I did not see any little girl; I just looked out and noticed everything was clear and went on; I did not look any more. The first I knew the child got across and was struck. Q. "These gripcars have closed windows all around?" A. "Yes, sir." Q. "Standing at the grip, you could see this place, between the lamp post and where the boy was hurt?" A. "Yes, sir." Q. "If you had been looking?" A. "You could see a part of the way there; you could see it all by stooping down."

If the defendant's liability in this case is limited to want of care on the part of its servants after they saw the boy in a dangerous situation, then the plaintiff failed to make out a *prima facie* case. The evidence is all to the effect that the gripman used all the means at his command to avoid the calamity, after he knew the boy was in danger. But the principle of law just stated does not control this case. The defendant is operating dangerous machinery at a rapid speed on and along the public streets of the city, and must know, and in law is bound to know that men, women and children have an equal right to the use of the highway, and will be upon it. It is the duty of the defendant's servants to be on the lookout, and to take all reasonable measures to avoid injuries to persons who may be upon the street. The duty to be on the watch is no more than ordinary care under such circumstances. The care to be used to be ordinary care must depend upon the surrounding circumstances. Now the evidence of the gripman tends to show that when he came to the crossing he rang his bell, looked out and saw the way was clear, and then went on around the curve, neither looking to the right nor left. There is other evidence to the effect that the boy toddled along for a distance of at least thirty-five feet on the street, and in the direction of the approaching car after the gripman saw him on the sidewalk, and the car must have traveled a much greater distance. Other persons saw the boy and girl when they started across the street in front of the approaching car. Had the gripman cast an eye to the left when he reached the curve, or whilst passing it, he would, doubtless, have discovered these children in time to have avoided the injury. He says he stopped the train in a space of six feet after the gripcar had passed the curve, and, if that be so, then there is reason to believe that the evidence of another witness to the effect that it could have been stopped on the curve in a space of four feet is true.

But assuming that both estimates should be doubled to approach accuracy, still the jury might well have found, as they did by their answers to interrogatories, that the gripman could, by the exercise of ordinary care, have seen the plaintiff in time to have stopped the train before plaintiff was injured. It was admitted on the trial that this accident happened on one of the principal traveled streets in the city. If we say the jury should have been directed to find for defendant, then we must hold, as a matter of law, that it was sufficient care on the part of the gripman when approaching the curve to ring his bell, see that the track before him was clear and go ahead without thereafter looking to the right or left. This we are not prepared to do. The question of negligence in this case was one of fact, and our duty is performed when we see that there is sufficient evidence to support the verdict, so far as the demurrer to the evidence is concerned.

If the child ran in front of the car and the gripman was free from negligence, then there ought to be no recovery. This proposition was placed before the jury in very clear terms by an instruction given at the request of the defendant wherein it is said that, before the plaintiff can recover, he must prove that he was injured in direct consequence of the negligence or carelessness of the person in charge of the defendant's car.

But it is said there is no evidence that the defendant was operating the road at the time of the accident, and that some of the instructions are bad because they assume that it was the defendant's car which ran over the plaintiff. No such question was mooted in the trial court. Besides, it may be inferred from the evidence of the brakeman and superintendent that defendant was operating the road. But aside from all this, the answer says the plaintiff's mother contributed to the injury by placing him in charge of a careless person who allowed plaintiff "to get in front of defendant's cars

suddenly, while they were in motion, so that the injury suffered by plaintiff was inevitable." The ownership of the car and operation of the road by defendant are admitted facts in the case. We fail to discover any merit in either of these objections.

The court, at the request of the plaintiff, gave this instruction:

"3. The court instructs the jury, as a matter of law, that negligence on the part of the little girl, who was with the child injured, or near him at the time of said injury, cannot affect the question of the right of plaintiff to recover in this case."

But refused to give the following instruction asked by the defendant:

"2. If the plaintiff's mother and natural guardian permitted plaintiff to go on or near the tracks of defendant, alone or in charge of a careless or incompetent person, and the carelessness and incompetency of such person contributed directly to plaintiff's injury, then the finding will be for the defendant."

*Hartfield v. Roper*, 21 Wend. 615, is cited to show that the court erred in its ruling on both of these instructions. The substance of the doctrine there asserted is, that, where a child of such tender years as not to possess the discretion to avoid danger is permitted by its parents or guardian to be in the public highway, the negligence of the parent or guardian will defeat a recovery in a suit by the child. This doctrine has been followed in some of the states. It is sometimes placed on the ground that the parent is the agent of the child, and other cases place it on the ground of identity between the parent and child. It probably stands as well on no ground at all as it does on either of them. The whole doctrine has been severely criticised by some of our best text-writers and denied by many courts. This court more than twenty years ago repudiated the doctrine in the case of *Boland v. Railroad*, 36 Mo. 484.

Says WAGNER, J., for the court: "Whilst the decision in *Hartfield v. Roper* may be supported by the facts in the case, as failing to show such negligence as would fix liability on the defendants, the reasoning of the learned judge on infantile responsibility is certainly harsh and repugnant to justice." The court then gives its adherence to the contrary doctrine asserted in the leading case of *Robinson v. Cone*, 22 Vt. 213. This is a suit by the child itself and the negligence of the mother, if any there was, in allowing it to go upon the public streets unattended by a person of mature years constitutes no defense whatever to this action. In support of this conclusion and the former ruling of this court it is sufficient to cite 1 Shear. & Redf. on Neg. [4 Ed.] sec. 78; Beach on Con. Neg., sec. 43; *Erie City P. Ry. Co. v. Schuster*, 113 Pa. St. 412; *Bellefontaine Ry. Co. v. Snyder*, 18 Ohio St. 399.

Even in the case of a suit by the parent all the circumstances are to be taken into account, and if the parent took as much care of the child as reasonably prudent persons of the same class and in the same situation in life ordinarily do, then the parent is not to be held guilty of such negligence as will defeat his action. 1 Shear. Redf. on Neg. [4 Ed.] sec. 72; *O'Flaherty v. Railroad*, 45 Mo. 70; *Frick v. Railroad*, 75 Mo. 542. The negligence of the parent to defeat his or her action must be the proximate cause of the injury. *Isabel v. Railroad*, 60 Mo. 75. Unless these principles of law are adhered to the poor of the land will be deprived of all benefit of the public schools in our cities which cannot be reached but by passing over and along the public highways. But no more need be said upon this subject for this is not a suit by the parent or guardian.

Appellant contends that the court erred under the modified doctrine stated in *Stillson v. Railroad*, 67 Mo. 671. There the little girl, eight years old, was in the

actual presence of the father. She attempted to pass through a small aperture between two cars standing on a track, and at a place which was not a public crossing, and was injured by the cars coming together. It was held that the negligence of the father should be imputed to the child in a suit by the child, inasmuch as the father was present and pointed out the place for her to go through and she was attempting to follow out his directions when injured. Of the cases there cited that of *Holly v. Boston G. L. Co.*, 8 Gray, 123, was one where the injury seems to have been caused from the negligent act of the father. In *Waite v. Railroad*, 96 Eng. C. L. 728, the child was in charge of its grandmother. The case of *Ohio & Miss. Ry. v. Stratton*, 78 Ill. 88, is a case where the boy ten years old was traveling with his father. The case concedes that the negligence of the parent or guardian having charge of a child of tender years would not excuse the carrier from using all the means in its power to prevent the injury, but relieves the carrier from liability for the negligence of the parent when the parent's negligence is the proximate cause of the injury. "In that event," says the court "it is not the negligence of the defendant, but of the party having the control of the child, and if any liability attaches to either party it must be to the latter."

The girl in the present case was, to some extent, the protector of the little boy, but she was a child only herself, and it is both unreasonable and inhuman to say that she filled the position of a parent or guardian. It might as well be said of twin children, out of the sight of the mother, that each is the responsible guardian for the other. If the girl was to some extent negligent that would not relieve the defendant from the exercise of due care. The *Stillson case* does not profess to disturb the former ruling of this court, and it is believed

has never been so regarded. It is at most no more than an exception to a general rule, and must stand on its own peculiar circumstances, and is wholly inapplicable to the present case. The facts as in that case stated would indicate that the negligence of the father, and not of the defendant, was the proximate cause of the injury. The court, in a subsequent part of the opinion, after stating that the question of negligence was one for the jury, uses this language: "But there must be some evidence on which to base instructions to a jury. After a careful examination of the testimony in the case, aided by the maps in the record, we have been unable to conjecture in what respect it is claimed that there was negligence on the part of the defendant." There being no negligence on the part of the defendant, it was no more liable to an infant than an adult; so that after all the father's negligence was the proximate cause of the injury. And that case should be regarded as standing on this ground and no other.

It follows from what has been said that the court did not err in its ruling upon these two instructions. In other instructions asked by the defendant the jurors were told in clear terms that before they could find for plaintiff he must prove that he was injured in direct consequence of the negligence of the person in charge of defendant's car; that if the gripman was using ordinary care in looking out and attending to his business, but did not see the plaintiff in time to stop the car before running over him, then there was no negligence on his part; and that ordinary care means that degree of care which an ordinarily prudent and careful person would exercise under like circumstances. The plaintiff's instructions are in accord with those given for defendant, and no substantial objection is made to them. The judgment is therefore affirmed. All concur.