MAX BURNSTEIN, Respondent, v. CASS AVENUE AND FAIR GROUNDS RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, January 2, 1894.

1. **Practice Appellate:** NON-PREJUDICIAL ERROR: EXCLUSION OF CUMULATIVE EVIDENCE. The erroneous exclusion of evidence, which is merely cumulative to uncontradicted testimony in the case, is non-prejudicial error.

2. **Street Railroads:** RELEVANCY OF EVIDENCE IN ACTION FOR INJURIES. Evidence, that the locality in which a child was run over by a street car was thickly located, is relevant in an action for the injury against the railway company.

3. ————: INSTRUCTIONS IN SUCH ACTION. The instructions in this case, which was of the nature indicated, are reviewed, and *held* not misleading nor subject to objections made thereto.

4. **Practice Appellate:** WEIGHING THE EVIDENCE. Appellate courts will not weigh conflicting evidence in an action at law.

*Appeal from the St. Louis City Circuit Court.*—HON. JOHN A. HARRISON, Special Judge.

AFFIRMED.

*Smith P. Galt* for appellant.

(1) The court erred in permitting plaintiff to prove that the neighborhood of Seventh and Wash streets is densely populated. (2) The court erred in striking out and excluding from the jury all the testimony of Schreihagen, defendant's witness, concerning the Burnstein boy and his two companions hanging to and jumping on the cars of defendant, and also of the Northern Central Railway Company at Seventh and Wash streets, for an hour immediately preceding the accident. (3) The court erred in plaintiff's instruction number 1 (printed abstract, p. 46,) in this, that it tells the jury to find for the plaintiff, if the driver of the car could have seen the plaintiff either on the track or moving towards it in time to have stopped the car and prevented the injury, though he may have been in no danger at the time. To make the defendant liable, where the plaintiff has also been negligent, it must be shown that the proximate cause of the injury was defendant's omission, after becoming aware of plaintiff's danger, to use a proper degree of care to avoid injuring him, or his failure to see his danger.

*Karle v. Railroad*, 55 Mo. 476; *Isabel v. Railroad*, 60 Mo. 475; *Maher v. Railroad*, 64 Mo. 267; *Rine v. Railroad*, 88 Mo. 392; *Harlan v. Railroad*, 65 Mo. 22. (4) The other instructions given by the court were erroneous, because they assumed controverted facts, and laid undue influence upon certain features embodied in them. Thus one of them, number 4, declares that, "even if" the jury find that the plaintiff was negligent, etc., etc., thereby implying grave doubt in the mind of the court upon that subject.

*Nathan Frank* and *Charles W. Bates* for respondent.

(1) Proof, that the locality where the injury occurred was thickly populated, was properly admitted. *Dunkman v. Railroad*, 95 Mo. 232. (2) There was no error in striking out the testimony of the witness, Schreihagen, in regard to the plaintiff and other boys jumping on cars other than the one which caused the injury, and at other times than that at which the injury occurred. But, if competent, it was merely cumulative. *Morgan v. Wood*, 38 Mo. App. 255. (3) The whole case was fully covered by the instructions; there was no error in the instructions given, nor in refusing those which were refused. *Hill v. Railroad*, 49 Mo. App. 520; *Winters v. Railroad*, 99 Mo. 509; *Dunkman v. Railroad*, 95 Mo. 232, 244–246; *Donahue v. Railroad*, 91 Mo. 357; *Hilz v. Railroad*, 101 Mo. 36, 54; *Kellny v. Railroad*, 101 Mo. 67; *Eswin v. Railroad*, 96 Mo. 290, 295; *Fink v. Missouri Furnace Co.*, 10 Mo. App. 61; *Buck v. Railroad*, 46 Mo. App. 555, 563; *Haniford v. City of Kansas*, 103 Mo. 172, 182.

BOND, J. —This action was brought by respondent, who is an infant, through his next friend against the

appellant as a common carrier, operating a street railway over certain streets in the city of St. Louis, for injuries caused to him by the violation of the following ordinance governing street railroads, to-wit: "The conductor and driver of each car shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it; and, on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible."

It is alleged in the petition that on the twenty-sixth of April, 1891, while respondent was lawfully on Seventh street at or near its intersection with Wash street, appellant's driver and servants in charge of their horse cars, in disregard of said ordinance, negligently and willfully drove said car against and over respondent, whereby he was so injured that it became necessary to amputate his left arm; wherefore he prayed judgment for $15,000.

The answer of appellant admitted that it was a corporation operating a street railway as charged in the petition, and that respondent was injured by one of its cars; but denied that it was injured as alleged in the petition, and averred that said injuries were caused by respondent's contributory negligence or that of his parents.

The evidence adduced by respondent tended to show that he and two other boys were passing from the west side to the east on the corner of Seventh street at a time when a car, owned by defendant, was being driven north on Seventh street; that the driver of said car was looking on the west side of the street, while the same was approaching where some boys were fighting; that respondent was knocked down by one of the horses and that both wheels of the car ran over his arm; that, when the horses were fifteen or twenty feet

from respondent, a by-stander hallooed to the driver, "*Hold on, the boys is passing*;" that the driver did not stop the car; that people stopped the car on the north side of Wash street; that the driver "licked" his horses, and turned west on Wash street ahead of another car which was east of the point where he turned into Wash street, but which was going west on Wash street.

Appellant's evidence on the contrary tended to show that the injury was occasioned by the little boy having run across the street from the gutter, where he was sitting as the car approached, and having attempted with some companions to catch hold of a cornice jutting out about two inches on the side of the car, and thereby falling underneath his companions in front of the hind wheel of the car, and thus suffered the injury complained of.

There was a judgment in favor of respondent in the lower court from which this appeal is taken.

The first position of appellant is, that the trial court committed reversible error in excluding from the consideration of the jury the testimony of a witness (Schreihagen) concerning the conduct of the boy in jumping on *other* cars than the one which injured him.

We do not think this position is tenable. If not irrelevant, the excluded testimony was merely cumulative to the *uncontradicted* evidence of other witnesses and its exclusion, at most, harmless error. *Morgan v. Wood*, 38 Mo. App. 260.

Nor do we think the admission of evidence, that the place of accident was thickly populated, is ground of reversal. Such a locality called for the full exercise of the care prescribed by law for street railways in populated districts and large cities. *Dunkman v. Railroad*, 95 Mo. 244, 256.

Among others the court gave the following instructions:

"1. The court instructs the jury that it was the duty of the driver of defendant's car to keep a vigilant watch for persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons to stop the car in the shortest time and space possible; and if the jury believe and find from the evidence that plaintiff, Max Burnstein, was either on the track or moving toward it, and that the driver of defendant's car would have seen him in time to have stopped the car and prevented the injury to said Max, if he had kept a vigilant watch, their verdict should be for the plaintiff, unless the jury finds for defendant under instruction number four now given you.

"2. The court instructs the jury that notwithstanding you may believe that Max Burnstein was playing at, near or on, the track, yet if you further believe that the driver of defendant's car by the exercise of reasonable care could have seen him, and the car could have been stopped by the driver by the exercise of ordinary diligence in time to have averted the injury to said Max, their verdict should be for the plaintiff, unless the jury finds for defendant under instruction number four now given you.

"3. By the words 'reasonable care,' as used in these instructions with reference to the duty of the driver of the defendant's car, is meant such care as a reasonable, prudent and cautious, man would have exercised under the same or similar circumstances, and the words imply the use of such watchfulness and precaution as were fairly proportioned to the danger to be avoided.

"4. The court instructs the jury that, while the plaintiff in this case should not be held to a greater measure or degree of care and caution than that

ordinarily exercised and to be reasonably expected from a person of his years at the time and under the circumstances of the injuries to him, yet he was bound to exercise such care and caution; and if you believe under the testimony that he did not exercise the same, and thereby and by his own negligence directly contributed to his receiving his injuries, then your verdict should be for the defendant, unless the jury further find and believe from the evidence that, before the accident and after the driver of the car discovered, or might by the exercise of reasonable care on his part have discovered, the danger in which plaintiff was, he, the said driver, could by the exercise of reasonable care have averted the injuries complained of, in which case the negligence of plaintiff (*even* if the jury find he was negligent) will not in itself defeat a recovery by him in this case."

The court, at defendant's request, gave to the jury the following instructions:

"5. The court instructs the jury that, if they believe from the evidence that the boy Burnstein was sitting, playing with other boys, in or about the gutter on the east side of Seventh street, and in no danger, where he then was, of being struck by the horses or car, and that, as the horses were about passing him, Burnstein and the other boys started and ran southwardly, east of the horses, and passed the front of the car, and the driver did not see him, or have an opportunity of seeing him, while discharging his duties then and there incumbent upon him; or, if he had seen him, that under all the circumstances then and there existing he would have no reason to think that he was going to or against the side of the car, then the driver was not required to then and there stop the car; and the court instructs the jury that, if they so believe as aforesaid, and further believe that the boy Burnstein did so

run, and fell against or alongside of the car, and upon the rail behind the front of the body of the car, and so received his injuries, then the jury will find their verdict for the defendant.

"6. The court instructs the jury that, if they believe from the evidence that the car was not driven towards and against the plaintiff, and thereby he was knocked down, but that in some other manner that plaintiff received his injuries, it matters not how, then their verdict must be for the defendant."

The court modified an instruction requested by the appellant by the addition thereto of the words inclosed in brackets in the following instruction, which, as thus modified, is to-wit:

"7. The court instructs the jury that, under the provisions of the ordinance read in evidence, the driver of the car was not required to look behind him for persons approaching the track, for such a requirement would be unreasonable, and would be dangerous to persons on or approaching the track ahead of the car, and if the jury believe from the evidence that plaintiff, Max Burnstein, was not on the track or approaching it ahead of the car, and in danger on that account of being run over by it but that he ran [from behind the driver] up to the side of the car [so that said driver by the exercise of reasonable care on his part would not have discovered his danger in time to have averted the accident], and in some manner, it matters not how, fell alongside of it and was run over by it, and thereby received his injuries, then the jury will find their verdict for the defendant."

· We do not think that instruction number 1, *supra*, by any fair intendment, could have been construed by the jury as implying a duty on the part of the driver to stop the car *before* respondent got near enough to the car to be in danger. The ordinance pleaded by respondent makes it a duty to stop the car on the *first*

appearance of danger to persons on foot, especially children. This ordinance was substantially recited in this instruction, and the jury could not have justly inferred from the language of the instruction, taken as a whole, that there was any duty cast upon the conductor of the car to stop it before the plaintiff had got to a point giving his situation the *appearance of danger*.

Not only did the first clause of the instruction tell the jury that the duty of stopping the car attached on the *first appearance* of danger, but the second clause of the instruction expressly directed them that it became the duty of the driver to do so, if he could have seen respondent *in time* to have stopped the car and prevented the injury. There was clearly nothing in this language, warranting the jury in finding that it was the duty of the driver to stop the car in the *absence* of any apparent danger to respondent.

Taken in connection with the express statement in the instruction complained of, *limiting* the duty of the driver in stopping the car to the *first appearance* of danger, and with the direction therein to stop the car *in time* to *prevent the injury*, and also with the full and specific directions contained in the numerous other instructions, to the effect that it was not the duty of the conductor to stop the car if the boys were playing in the gutter and not in danger of being struck by the horses where they were, it is apparent there was no just ground for a misconception, on the part of the jury, of the duty of the driver in the matter of stopping the car. *Henry v. Grand Avenue R'y Co.*, 113 Mo. 536; *Russell v. Ins. Co.*, 55 Mo. 585; *Winters v. Cable Railway Co.*, 99 Mo. 517; *Dunkman v. Railroad*, 95 Mo. 244; *Kellny v. Railroad*, 101 Mo. 77.

Appellant also contends that instruction number 2 could be understood by the jury as requiring the driver to stop the car when he saw the children playing in the

gutter. This deduction is unwarranted. The language of the instruction is that, if respondent "was playing *at, near* or *on* the track," and if the conductor by reasonable care could have seen him, and by ordinary diligence could have stopped the car, then it was his duty to do so. This language excluded any basis for the inference suggested by the appellant.

Nor do we think there is any force in appellant's criticism as to the definition of reasonable care, contained in instruction number 3.

We do not see in instruction number 4 any ground for the contention of appellant, that a controverted fact was therein assumed. We are also satisfied that terms *"even if,"* as used in this instruction, signify *although*, and were not intended to be used in a different sense.

Appellant also complains of the refusal of the court to give two other instructions prayed by him. The court modified each of the instructions and gave one of them in the form of instruction number 4 in this opinion, and the other in the form of instruction number 7, as set out in this opinion We do not think the court committed any error in giving said instructions in their modified state.

We have examined with care the somewhat voluminous instructions (15) given by the court in this case, and we do not find any errors therein of which appellant can complain.

The remaining point urged by appellant is that the verdict in this case was against the weight of the evidence. In cases of conflict in testimony, as in the case at bar, appellate courts do not weigh the evidence. The result is that the judgment is affirmed. All concur.