## CLAUDIUS BOTTOMS v. THE SEABOARD & ROANOKE RAILROAD COMPANY.

*Action for Damages—Negligence—Contributory Negligence of Child—Negligence of Child Imputed to Parent—Railroad Companies, their privileges and duties.*

1. An infant twenty-two months old is incapable of contributory negligence so as to relieve a railroad from liability for the negligent acts of its employees.

2. The negligence of a parent or guardian in allowing a child of tender years to stray and wander on a railroad track cannot be imputed to such child so as to relieve a railroad company from responsibility for the negligence of its employees in an action brought by or on behalf of the child.

3. While an engineer of a moving train has the right to suppose that an adult on the track will leave it and is not required to slacken speed, yet when a child without discretion or intelligence is seen or can be seen its presence must be regarded; and if the engineer, by the exercise of reasonable care and prudence, can discover a child on the track in time to stop the train, or can, with the exercise of reasonable or ordinary care and prudence, discover that a small child is going towards the track or running near so as to make it probable that it will go on the track, and such discovery can be made in time to stop the train, it is the duty of the engineer to stop and negligence in the company if he does not stop.

(Discussion by the Chief Justice of the doctrine of "imputed negligence").

This was a CIVIL ACTION, tried at Spring Term, 1893, of the Superior Court of NORTHAMPTON County, before *Hoke, J.*, and a jury.

The following issues were submitted to the jury:

"1. Was the plaintiff injured by negligence of defendant?

"2. Did plaintiff's own negligence contribute to his injury?

"3. Notwithstanding the contributory negligence of plaintiff could defendant have avoided the injury by the exercise of ordinary care and prudence?

"4. What damage is plaintiff entitled to recover?"

The defendant, after the evidence was closed, objected to the submission of the third issue. Objection overruled, and defendant excepted.

John Morgan, witness for the plaintiff, testified: "The plaintiff was struck by defendant's train at Seaboard, in this county, in the fall of 1889; happened near a house five hundred yards from depot, on south side of road. Turner Bottoms is father of Claudius. His house is fifteen yards from railroad, on north side; a house thirty or forty yards on south side road. It was eleven o'clock A. M.; fair day and little wind. I saw the engine when it struck plaintiff; it occurred thirty or forty yards from witness's house, almost opposite the house, little towards Seaboard. There was a county crossing at place. There was no ringing of bell or blowing of whistle. Mother was at my well, drowing water. I saw it before it was struck in middle of the track, and at that point track a little elevated, and place approached on an up grade from Seaboard; think train had stopped at Seaboard that day. Engineer, by looking out, could have seen the child from Seaboard five hundred yards; there was nothing to obstruct view. Witness got to child first; it appeared to be about dead when others got to it; blood running from its mouth and nose; did not examine its legs; back part of head seemed injured, but child appeared to be dying and witness didn't observe it closely. There was a path crossing road at place, going from one place to other; county crossing is between this path and Seaboard. There were no bushes to obstruct view; no other obstruction between Seaboard and place where child was struck; child was running from engine towards south, and had gotten twenty-five or thirty yards from path; witness didn't know how long it had been on track; child was

twenty-two months old; one hundred yards between the crossing and path."

*Cross-examined.*—"The mother was in habit of coming for water, but witness don't know that child had come with mother before. Witness said on another trial that he first saw child ten steps from engine; child was twenty-five or thirty yards from path where it was struck. Witness said before, and says now, that child was knocked as high as head-light. County crossing three or four hundred yards from depot; didn't whistle that day at depot. They whistle for crossing at or near depot usually. Train was running at pretty good speed."

Ed. Smith, witness for plaintiff, testified: "Saw child at a distance of four or five hundred yards down track towards Seaboard. Witness went up on bank to see train pass, and was looking towards train; saw child and saw train when it struck child; child was coming towards witness when it was struck; child was thrown down the embankment on the south side; pitched up first towards head-light; up grade from Seaboard nearly all the way from depot to child, and there was a bank three or four feet high where child was struck; child was twenty or thirty yards beyond path from depot when struck: saw child when it got upon road; it had to get up the bank to get on; train was at switch, one hundred and fifty or two hundred yards from where it struck child. If child was on track it could have been seen from depot, and could also see child at side of the track from depot. There was nothing to obstruct view. Witness could see both child and engine from point where witness was. It was clear view. Witness never heard train blow or give any signal for crossing, nor when it approached child. It was a fair day; train made no stop after striking child, nor before, that witness could discover; witness could have heard signal if it had been given; was in five feet of

track; the view was clear and unobstructed forty or fifty feet on either side of the track, looking from depot; saw child after carrying it home, either in evening or next morning."

Other witnesses for the plaintiff testified that, though they were a few hundred yards from the place of the accident, they heard no whistle or ringing of bell at or about the time the accident occurred.

Witnesses for the plaintiff also testified that there were no bushes or other obstructions to the view near the track where child was struck.

Mary J. Bottoms, witness for defendant, testified: "Am mother of plaintiff. I left child in the house and left the door open; child had not been in habit of following witness for water; witness might have said child had followed before, but don't recollect it; no one was left with child in the house; child had seen witness going in that direction; house was one step above the ground; the child, at that time, could walk all about, but didn't walk off by itself."

*Cross-examined.*—"When train struck child witness was at well."

*Re-direct.*—"Child fell off bed and re-broke its leg after the doctor had set it, two or three weeks after injury; witness and her husband worked for a living, and had no one to leave with child."

Ed. Clark, a witness for defendant, testified: "Am locomotive engineer, and have been for fifteen years; was the engineer on passenger train that day; when witness left depot blowed crossing blow at whistle-post, a post to notify engineer when to blow; this post is fifty yards from Seaboard; blew two long and two short blows; know where Bottoms' house is, and was running twenty or thirty miles an hour; witness was an engineer, and his duties were to look ahead as much as possible when not necessarily

engaged on matters in engine; it was possible for child to have gotton on track one hundred yards ahead and witness not seen it at all; engineer's first duty is to look after safety of his passengers by keeping water to proper level and in other ways in engine, and by looking ahead on track; chief observation is to the track proper, down the center of it, and does not observe objects on side of track unless something unusual attracts his attention; witness's position is on right, and everything on left side would have to be at least forty yards forward on left side to come in sight; witness did not see child that day; was looking ahead that day; saw something cross, and asked fireman if he hit anything; fireman looked back and said a woman there was wringing her hands and seemed crazy."

*Cross-examined.*—"Witness don't know what he was doing at the particular time, but swears he was attending to some duty as engineer; said on former trial that there were some bushes or undergrowth along bank that might have hid child from view, and says that now; track up grade; could have seen child from depot; could have seen it was some object on track. Morgan swore before that he heard mother say child was left at home by itself and followed her after water."

Dr. Stephenson, witness for defendant, testified: "Don't think the injury of the plaintiff permanent; child is awkward and clumsy."

George Davis, witness for defendant, testified: "Was fireman on engine; whistle was blown and bell rung at crossing."

*Cross-examined.*—"Didn't see child; saw pig; curve to right going towards Weldon; looking back to see if engine had struck some pigs, and saw back one hundred yards to woman wringing her hands, etc. I called Mr. Clark's attention to pigs."

Defendant closed.

The Court charged the jury, as to the first issue, as follows:

"If the defendant, by the exercise of reasonable care and prudence, could have discovered the child on the track in time to have stopped the train, it was its duty to have done so; or, if defendant, in the exercise of reasonable or ordinary care and prudence, could have discovered that a child of the age of twenty-two months, or very small, was going towards the track or running along very near it, so as to render probable that it would go on the track, and discovery could have been made in time to have stopped the train, it was the defendant's duty to stop, and the defendant would be guilty of negligence in failing to stop. The engineer has a right to suppose that an adult will leave the track and continue its speed, but when a child, without discretion or intelligence, is seen, or could have been seen, its presence must be regarded. If the child came on the track suddenly or unexpectedly, so near ahead of the train that it could not be discovered in time to stop the train in the exercise of ordinary care, then there is no negligence; or, if it came on the track when the engineer and fireman were engaged in their necessary duties in the cab, and they were so engaged long enough to prevent them from observing the child, then there was no negligence. The engineer's first duty to passengers is to keep his engine in proper condition, and also to keep a proper outlook on the track, and for objects so near it as to make their presence a probable obstruction or interruption. If the sight of the child was prevented by the necessary attendance by the engineer and fireman to matters inside the cab, and this continued until the time they reached the child or came so near it that the engine could not be stopped in the exercise of ordinary care, the defendant would not be guilty of negligence."

To this charge the defendant excepted.

The Court further charged the jury that if they believed the evidence they should answer the second issue, "Yes."

The Court further charged the jury as to the third issue: "But the contributory negligence of the plaintiff does not necessarily justify or excuse the defendant. If, notwithstanding this negligence of the plaintiff, the defendant could have avoided inflicting the injury by the exercise of ordinary care, the defendant would still be responsible, and the jury should answer the third issue, 'Yes.' If the defendant, by the exercise of reasonable or ordinary care and prudence could have discovered the child on the track in time to have stopped the train, it was its duty to have done so; or, if defendant, in the exercise of reasonable or ordinary care and prudence, could have discovered that a child of the age of twenty-two months, or very small, was going toward the track or running along very near it, so as to render it probable that it would go on the track, and discovery could have been made in time to have stopped the train, it was the defendant's duty to stop. The engineer has a right to suppose that an adult will leave the track and continue his speed, but when a child, without discretion or intelligence, is seen, or could have been seen, its presence must be regarded. If the child came on the track suddenly or unexpectedly, so near ahead of the train that it could not be seen in time to stop the train in the exercise of ordinary care, then you will answer the third issue, 'No.' The engineer's first duty to passengers is to keep his engine in proper condition, and also to keep a proper outlook on the track, and for objects so near it as to make their presence a probable obstruction or interference, and if the sight of the child was prevented by the necessary attendance by the engineer and fireman to matters inside the cab, and this continued until the time they reached the child, or so near the child that the engineer

could not have stopped the train by the exercise of ordinary care, then you will answer the third issue, 'No.'"

Upon this issue the Court repeated, in substance, its charge to the jury on the first issue, and charged the jury, among other things, as follows:

"The failure to blow the whistle was not of itself negligence, because the injury did not result from it, but the failure to blow, if it occurred, is evidence on the general question as to whether the defendant was in the exercise of ordinary care."

To this charge defendant excepted.

There was a verdict for the plaintiff and judgment thereon for $1,200, and defendant appealed.

*Mr. E. C. Smith*, for plaintiff.
*Mr. W. H. Day*, for defendant (appellant).

SHEPHERD, C. J.: It is unquestionably true, as argued by counsel, that in order to maintain an action for negligence the plaintiff must not only show the existence of a duty on the part of the defendant, but he must also show that the duty is due to him. *Emry* v. *Navigation Co.*, 111 N. C., 94. It has been decided by this Court that it is the duty of an engineer in running a railroad train to exercise ordinary care by keeping a lookout on the track in order to discover and avoid any obstructions that may be encountered thereon. This duty is due to passengers; and, as a general rule, the duty is likewise due to the owner of cattle running at large; to the owner of other property which, under certain circumstances, may be on the track; and also, as a general rule, to persons who may be on the same at places other than crossings. It has also been decided in many cases, and may be regarded as perfectly well settled, that the failure to exercise such ordinary care in discover-

ing persons or property in time to avoid a collision cannot, except in the case of cattle running at large, be made the subject of a recovery where the plaintiff's negligence is the proximate cause of the injury.

In the present case the jury have found, under proper instructions of the Court, that the plaintiff was injured by reason of the negligence of defendant. The plaintiff is, therefore, entitled to recover unless he was guilty of negligence as above stated. The real questions presented, therefore, are whether the plaintiff was of sufficient age and discretion to be capable of contributory negligence, and if not so capable, whether the negligence of the parent can be imputed to him?

It is admitted by the pleadings that the plaintiff was at the time of the accident "an infant of tender years" who had been permitted by its mother "to stray and wander" on the track of the defendant. From the language of the admission we would, if it were necessary for the purposes of this decision, be well warranted in holding that *prima facie* the plaintiff was of such a tender age as to be incapable of negligence. Apart from this, however, it is established by uncontradicted testimony, and also admitted by counsel for the defendant, that the plaintiff at the time of the accident was, in fact, but twenty-two months old. In several of the States it has been held that an infant of that age is as a matter of law incapable of contributory negligence (2 Thompson Neg., 1181); while in others it is held, in analogy to the rule of the common law as to criminal responsibility, that an infant under the age of seven years is also incapable, but that the presumption may be rebutted by testimony and that the question may be determined by the jury. 1 Shearman & Red. Neg., 73, n.

Applying either rule to the present case, it is clear that the plaintiff was incapable of contributory negligence, and

it must follow that unless the negligence of his mother can be imputed to him there is nothing to bar his recovery.

Conceding only for the purposes of this discussion that the mother was guilty of contributory negligence in going to the well and leaving her infant child in the house without closing the door, and also conceding, what is intimated in *Manly* v. *Railroad*, 74 N. C., 655, and indeed is well sustained by the authorities, that if it be contributory negligence it would defeat an action brought by the parent, we are not prepared to accept the doctrine which obtains in some few jurisdictions that such negligence can be so imputed to the child as to defeat an action when brought in its own behalf.

As the question has never been passed upon in this State it may not be inappropriate to quote at length from some of the leading authorities upon the subject. The imputation of the negligence of parents and guardians to children of tender age is, says Shearman & Redfield (Vol. I, 74), an invention of the Supreme Court of New York in the leading case of *Hartfield* v. *Roper*, 21 Wend., 615, and has been followed in many of the decisions of that State, although it is said by these authors to be founded upon a *dictum* which has only been assumed to be the law by the Court of last resort, but never squarely presented to that tribunal for decision. And they further remark that it may well be doubted whether the question has ever been fully argued anywhere, and that the result of their examination of the cases is to satisfy them "that the last of the long series of so-called decisions on this point is like the first, a mere *dictum* uttered without hearing argument and without consideration."

Some of the decisions approving the doctrine are based upon the ground that the parent must in law be deemed the agent of the child, while others put it upon the ground

that the child is identified with its parent or guardian, "a legal fiction which led to the famous and now exploded decision of *Thoroughgood* v. *Bryan*, 8 C. B. 116," recently overruled by the English appellate Court in "The Bernia." L. R., 12; Pro. Div., 58; 1 Shearman & Red., *supra*, sects. 66-75. In reviewing the case of *Hartfield* v. *Roper, supra,* Mr. Beach says that the doctrine as applied to children too young to exercise discretion is an anomaly and in striking contrast with the case of a donkey which is carelessly exposed in the highway and negligently run down and injured, and also with the case of oysters carelessly placed in the bed of a river and injured by the negligent operation of a vessel; in both of which cases actions have been maintained. And he forcibly observes that under the principle referred to "the child, were he an ass or an oyster, would secure a protection which is denied him as a human being of tender years." This author in his examination of the doctrine remarks as follows: "It is not true that an infant is not *sui juris*. In the sense of being entitled to maintain an action for his own benefit he is *sui juris*. As far as his right of action is concerned he is in no respect the chattel of his father. * * * The judgment (when suing by guardian or next friend), if any is recovered, is the property of the minor; it is recovered to his sole use. It is an entirely false assumption in *Hartfield* v. *Roper* that the parent or guardian may recover heavy verdicts for their own misconduct. Again, it is assumed in that opinion that an infant, injured by the joint negligence of his parent and a third person, can have legal redress against the parent. 'It is much more fit,' say the Court, 'that he should look for redress to that guardian.' If this be so, if the right of the infant be so distinct from the duty of the parent that the relation of parent and child is not an objection to the maintenance of such a suit, then the whole theory upon

which this class of cases rests falls to the ground.   Again, it is falsely assumed that the parent is the agent of the child.     *     *     *     The relation of child and parent is not the relation of principal and agent, neither is it analogous to it.   The child does not appoint his father; he has no control over his acts; he cannot remove him from power and appoint another in his stead; he has no right of action against him; every element of agency is wanting.   The want of any one of these elements is sufficient to prevent the acts or omissions of the parent from being received as the acts or omissions of the child upon any analogy drawn from the law of agency.   By the common law a child cannot appoint an agent.   The authority by which the parent exercises control over the child is therefore an authority derived from the law.   It is a principle of law laid down before 'the spacious days of great Elizabeth' that the abuse of an authority derived from the law shall not work harm to or prejudice the rights of the person subjected to it. The parent's authority is given for the protection of the child, but the principle of *Hartfield* v. *Roper* turns the shield into a sword and uses it to deprive the child of the very protection arising from the parental relation."   Beach Con. Neg., 42.

In Wood on Railroads, sec. 322, it is said: "The doctrine announced in this case (*Hartfield* v. *Roper*) has been followed in some jurisdictions, but the modern tendency is to reject it, and to hold the negligent injurer liable for the consequences of his own wrongful act regardless of the contributory negligence of the child's parent or guardian."

Bishop, in his work on Non-contract Law, 582, emphatically rejects the doctrine, and observes that it is "as flatly in conflict with the established system of the common law as anything possible to be suggested."   And an examination of the leading text-books which treat of negligence

will disclose that it is also disapproved as being contrary
to principle and reason as well as the rapidly accumu-
lating weight of authority. Wharton Neg., 312–314; Pol-
lock Torts, 299; Cooley Torts, 681; 2 Thompson Neg.,
1184; Shearman & R., *supra;* Beach, *supra.*

In Tennessee the doctrine is denounced as being opposed
"to every principle of reason and justice" (*Whirly* v. *White-
man*, 1 Head., 610), and in Pennsylvania it is declared to be
"repulsive to our natural instincts and repugnant to the
condition of that class of persons who have to maintain
life by daily toil." *Kay* v. *Railroad*, 65 Pa., 269.

In *Newman* v. *Phillipsburg Horse Car Co.*, 52 N. J. Law,
446, Chief Justice BEASLY, after exposing the fallacy of
basing the doctrine on the ground of agency, demonstrates
its untenableness by conducting us to the rather absurd
conclusion of making an infant in its nurse's arms answer-
able for all the negligence of such nurse while thus em-
ployed in its service. "Every person so damaged by the
careless custodian would be entitled to his action against
the infant. If the neglect of the guardian is to be regarded
as the neglect of the infant, as was asserted in the New
York decision, it would from logical necessity follow that
the infant must indemnify those who should be harmed by
such neglect."

In Vermont the subject was examined with much care
in the leading case of *Robinson* v. *Cone*, 22 Vt., 213, in
which the Court denied the doctrine of imputed negligence
as laid down in Hartfield's case, and held that, although
a child of tender years may be in the highway through the
fault or negligence of his parents and so improperly there,
yet if he be injured through the negligence of the defend-
ant, he is not precluded from redress. "All," says Judge
REDFIELD in delivering the opinion, "that is required of
an infant plaintiff in such a case being that he exercise

care and prudence equal to his capacity." This rule is also laid down in *Railroad* v. *Gladman,* 15 Wall., 401, which is cited with approval in *Murray* v. *Railroad,* 93 N. C., 92.

"The Vermont rule, as it is called," remarks Shearman & Redfield, " commends itself to our judgment and is abundantly justified by the reasoning of the Courts which have adopted it. * * * It should be fully applied to such cases, giving to defendants who suffer from its hardships the same consolation which Courts administer to plaintiffs when nonsuiting them—that their case is very hard and deserves sympathy, but that the law must not be relaxed to meet hard cases." " If, where one or two innocent persons must suffer, the law puts the loss, as it justly does, upon the one who has by some negligence enabled the wrong to be done, surely when there are two guilty persons in the transaction the law should not leave the only innocent one to suffer, as it practically does, by referring him to his parent or guardian for an injury of which a stranger has been the principal cause" (sections 77, 78). "No injustice can be done to the defendant by this limitation of the defence of contributory negligence since the rule itself is not established primarily for his benefit, and he can never be made liable if he has not been himself in fault" (section 73). The doctrine of *Hartfield* v. *Roper* has also been denied in Pennsylvania, Ohio, Connecticut, Missouri, Nebraska, Alabama, Tennessee, Texas, Georgia, Louisiana, Illinois, Iowa, Maryland, Michigan, Mississippi, New Hampshire, Virginia, and perhaps in other States, while some of the Courts which have heretofore adopted the rule are subjecting it to so many qualifications in order to escape its harshness and injustice that but little of its original similitude remains. *Iron Co.* v. *Brawley,* 83 Ala., 371; *Daley* v. *Railroad,* 26 Conn., 591; *Ferguson* v. *Railroad,* 77 Ga., 102; *Railroad* v.

*Wilcox,* 33 Ill. App., 450; 27 N. E. Rep., 899; *Wymore v. Maharka Co.,* 78 Iowa, 396; *Westerfield v. Lewis,* 43 La. A., 63; *Railroad v. McDowell,* 43 Md., 534; *Shippy v. An Sable,* 85 Mich., 280; *Westbrook v. Railroad,* 66 Miss., 560; *Winters v. Railroad,* 99 Mo., 509; *Huff v. Ames,* 16 Nebraska, 139; *Basilon v. Blood,* 64 N. H., 565; *Railroad v. Snyder,* 30 Ohio St., 451; *Smith v. O'Conner,* 48 Pa., 218; *Railway Co. v. Moore,* 59 Tex., 64; *Railroad v. Ormsby,* 27 Gratt., 455. These numerous authorities which we have thought proper to cite very abundantly sustain the position enunciated by the Supreme Court of the United States and adopted by this Court in *Murray v. Railroad, supra,* that in the law of negligence the degree of care and discretion required of an infant of tender years "depends upon his age and knowledge," and they also sustain the position that where the child is too young, as in this case, to exercise any discretion whatever, the negligence of his parent or other custodian in permitting him to escape and place himself in a perilous position will not be imputed to him so as to defeat his action for damages sustained by reason of the negligence of another.

There is nothing in Murray's case, *supra,* which at all conflicts with this view. The plaintiff was nearly eight years of age and of sufficient discretion to understand the danger to which he had exposed himself, and under the circumstances the Court held that he could not recover. The authorities quoted in the opinion, so far as they have any bearing upon this case, are in support of the view we have taken. Our attention, however, was called to a part of the opinion purporting to be founded upon a paragraph in a former edition of Shearman & Redfield, to the effect that while an infant should be held to a degree of care only as is usual among children of his age, yet, "if his own act directly brings the injury upon him, while the

negligence of the defendant is only such as exposes the child to the possibility of injury," he cannot recover. In the fourth and later edition (section 73) of the same work this passage is reproduced with the following comments: "It was held in some English cases that if a child's own act directly brings the injury upon him, while the negligence of the defendant is only such as exposes the child to the possibility of danger, the latter cannot recover damages. But these decisions have been condemned in England and are directly opposed to the current of American cases. The law has been settled to the contrary in America by the famous series of turn-table cases, in which railroad companies have been held liable by the Federal Supreme Court, as well as by several State Courts of last resort." While the passage is really inapplicable to cases like the present, but only, it seems, to those in which, like the turntable cases, the child meddles with something which is perfectly harmless if let alone, and he thus "directly" brings the injury upon himself, we have nevertheless thought it best to show that in the opinion of the learned authors the proposition stated in the former edition of their valuable work is not sustained by the weight of authority.

Neither is there anything in *Meredith* v. *Railroad*, 108 N. C., 616, cited by counsel, which approves of the principle of imputable negligence. The question was not before us, but what was said *arguendo*, assimilating a child apparently too small to appreciate its danger to persons who are apparently helpless on the track, in respect to the duty of the engineer to use all available means to avert a collision, is really in support rather than in contradiction of the views we have expressed in this opinion.

We commend the charge of his Honor upon the first issue as a correct exposition of the duty of railroad companies in moving their trains, and especially the limitations

with which it is accompanied. The use of the words "ordinary care," unattended with explanation, would have been obnoxious to the authorities in this State (*Emry* v. *Railroad*, 109 N. C., 589), but as it is apparent from the instructions that they were used to indicate a vigilant lookout and also the exercise of all efforts within the power of the engineer to stop the train, we do not see how they could have prejudiced the defendant. Indeed, no objection to the charge in this particular was made on the argument and this we suppose for the reasons we have given.

Under these instructions it has been found that the defendant has been guilty of negligence, and as we are of the opinion upon the admitted facts that the plaintiff was incapable of contributory negligence the judgment of the Court below must be sustained, and it therefore becomes unnecessary to consider the learned argument of defendant's counsel upon the subject of contributory negligence in its relation to what is commonly known as the rule of *Davies* v. *Mann.*                                Affirmed.

CLARK, J., concurring: I concur in the conclusion reached, but dissent from some of the reasons given. The Judge charged the jury, I think, correctly, that "If the defendant by the exercise of reasonable care and prudence could have discovered the child on the track in time to have stopped the train, it was its duty to have done so; or if the defendant in the exercise of reasonable or ordinary care and prudence could have discovered that a child of the age of twenty-two months, or very small, was going towards the track or running along very near it, so as to render it probable that it would go on the track, and discovery could have been made in time to have stopped the train, it was defendant's duty to stop, and defendant would be guilty of negligence in failing to stop. The engineer has a right to

suppose that an adult will leave the track, and continue the speed, but when a child, without discretion or intelligence, is seen or could have been seen, its presence must be regarded. If the child came on the track suddenly or unexpectedly, so near ahead of the train that it could not be discovered in time to stop the train in the exercise of ordinary care, then there is no negligence; or if it came on the track when the engineer and fireman were engaged in their necessary duties in the cab, and they were engaged long enough to prevent them from observing the child, then there was no negligence. The engineer's first duty to passengers is to keep his engine in proper condition, and also to keep a proper lookout on the track, and for objects so near it as to make their presence a probable obstruction or interruption. If the sight of the child was prevented by the necessary attendance by the engineer and fireman to matters inside the cab, and this continued until the time they reached the child or came so near it that the engine could not be stopped in the exercise of ordinary care, the defendant would not be guilty of negligence"; and upon that instruction the jury found against the defendant. While the general underlying principles of the law do not change, their application in the changing conditions of life and the progress and development of the age must change. Originally, when air-brakes were unknown, and even after they were first introduced, a railroad company would not have been held liable for an injury caused by not stopping within the distance air-brakes would have made possible. The law is otherwise now. So, recently Congress by an enactment has followed some Courts and anticipated others by making railroad companies liable after a given date for all injuries caused by failure to use automatic couplers on freight as well as on passenger cars. And there are many similar instances of the progress of the

law, hand in hand, with the progress and development of the times. So, when the speed of railway trains was a fraction of what it is now, and the population sparse, it was not recklessness to fail to keep such a lookout as is now necessary to prevent accidents. But now that the number and speed of railway trains are vastly increased, and the population of the country also, a better lookout is required. A failure to keep a lookout, which in a given case the jury find would have prevented an accident, notwithstanding the negligence of the plaintiff in being helpless on the track, is recklessness in a high degree. It has always been held, and by all Courts, *semper et ubique*, that though the plaintiff has been negligent, if, notwithstanding that fact, injury by the defendant could have been avoided, but the defendant through recklessness or wantonness committed the injury, the defendant is liable.

There is no disposition in the Courts to throw restrictions around railroads in the free use of their tracks. They are becoming more and more important. Over their tracks roll daily the commerce of a people, the transportation of a continent. But with development comes the duty of increased care to avoid injury. Air-brakes, automatic couplers, Miller platforms, electric head-lights, heavier rails and other improvements permit accelerated speed, and the public demands it. But with the increased speed comes the duty of a better lookout. It is recklessness not to have it. The company should be held liable for every injury which could be avoided by a proper lookout, whether as to passengers, children, live stock, or people temporarily disabled and lying on the track. As to whatever it strikes a railroad engine is as deadly as a cannon ball. When there is target firing, though due notice is given, if a drunken man wanders across the field of fire and is lying asleep at foot of the target, but by proper lookout could be seen, yet

for want of it he is struck and killed, I apprehend this would be deemed recklessness. The same holds true as to a drunken man down and helpless on the track, when by keeping a proper lookout he would be seen and his death or injury avoided.