# CHARLESTON.

STRIBLING v. COAL CO.

Submitted January 25, 1888.—Decided February 25, 1888.

1. LIENS—RELEASE OF—DEED OF TRUST.

The owner of land conveys the same by deed to secure the payment of a specified number of coupon-bonds, and it is provided in the deed that said bonds are to be used in exchange for and to take up the outstanding debts of the owner, including the liens on the land, whether placed there by the owner or by former owners, so far as the same can be done, giving preference to the liens. A creditor who has a prior lien on a part of the land accepts in settlement of his debt coupon bonds, surrenders his original evidence of debt, and by writing under seal releases his lien. A number of other creditors having prior liens refuse to accept coupon bonds in satisfaction of them; and many of the bonds are used to take up simple contract debts of the owner. *Held,* (1) the terms of the deed did not make the taking up of all the prior liens a condition which, unless complied with, would make the release of their prior liens by those who had accepted bonds void; (2) the only limitation imposed by the terms of the deed is that the lien-creditors should be preferred in issuing the bonds; but the power to use the bonds in taking up the debts of the company is not confined to prior liens on the land, and could be rightfully used in taking up any debts of the company, including simple contract-debts. (p. 86.)

2. RELEASE OF LIEN.

Whether or not a particular transaction amounts to the release of a lien on real estate is a question of intention on the part of the releasor. In a doubtful case such intention will not be implied; but, when it is clear that such was the intention, a court of equity will enforce the release, although no formal release has been executed. (p. 90.)

3. LIEN—ADMINISTRATORS—POWERS—RELEASE OF LIEN.

An administrator has full control of the personal estate, and may sell the choses in action if the exigencies of the estate require it, or he may exchange a bond due to the estate for the note of a third person, and release the lien on real estate by which such bond is secured, and if done without fraud the transaction will be binding upon the administrator and those whom he represents. (p. 90.)

4. WAIVER—SUPREME COURT OF APPEALS.

When the parties, whose interests would entitle them to call for a decision upon a particular question presented by the record, waive such decision, this Court will not pass upon such question at the instance of a party who cannot be benefited or affected by such decision.  (p. 93.)

*Miller & Gallagher* and *J. S. Swann* for appellants.

*Mollohan & Jackson*, *W. S. Laidley*, *G. S. Couch* and *J. F. Brown* for appellee.

SNYDER, JUDGE :

In 1871, the Splint Coal Company, a corporation, was created and organized under the laws of this State for the purpose of mining coal, manufacturing iron and salt, and for other purposes. Between the date of its organization and December 1, 1875, the said company had become the owner and vested with the legal title to a large body of land, nearly 3,000 acres, situated on the south side of the Kanawha river, a short distance above the city of Charleston, in Kanawha county, of which about 900 acres was bottom land and the residue was hill land, with the improvements thereon, consisting of 2 salt furnaces, 23 salt wells, 5 mansion houses, 94 laborers' houses, and other buildings and improvements. These lands were purchased in tracts from a number of different persons, and many of the tracts were incumbered by vendor's and other liens, and the vendors conveyed them to the company subject to these prior incumbrances, the company assuming to pay off said liens as a part of the purchase-money, and executing its bonds for the residue, for which vendor's liens were retained by the respective vendors to the company. These liens, together with the judgments recovered against the company after the lands had been conveyed to it, made the aggregate amount of the liens

upon the property about $100,000.00. The company, being desirous of selling the whole of its property, then believed to be worth at least $250,000.00, at a meeting of its board of directors, held November 22, 1875, adopted a resolution authorizing its president to execute and deliver to Charles C. Lewis and Edward B. Knight, trustees, a trust-deed upon said property to secure the payment of 200 coupon bonds of $500.00 each, aggregating $100,000.00, with interest at 8 per cent., payable semi-annually, and the principal to mature 10 years after date ; " the bonds to be used in exchange for and to take up the outstanding debts and obligations of the company, including the liens upon the land, whether placed by the company or by the former owners of the land, so far as the same can be done, giving preference to liens." In pursuance of this resolution, the company executed the trust-deed, dated December 1, 1875, and the same was duly recorded in said county on January 7, 1876. A number of the creditors having vendor's and judgment-liens on the property accepted the coupon bonds secured in said deed in satisfaction of their prior liens on portions of the land, but other lien-creditors refused to accept coupon bonds in satisfaction of their prior liens, and some of said bonds were delivered to creditors of the company in discharge of simple contract debts, or for liens posterior to that of the trust-deed. On August 19, 1876, the board of directors, by resolution, directed $20,000.00 of said coupon bonds to be delivered to D. L. Ruffner, to be held by him as an indemnity to W. A. Quarrier, as surety, on debts of the company. And, on April 30, 1878, the board ordered all the coupon bonds not theretofore issued to be placed in the hands of said Ruffner as collateral security to indemnify Job E. Thayer and W. A. Quarrier as sureties upon debts due from the company. According to the provisions of the trust-deed and these resolutions, the whole of the 200 coupon bonds were issued and delivered to the creditors of the company, but less than $20,000.00 were accepted in discharge of vendor's and other liens prior to that of the trust-deed, though a number of the bonds were delivered to such prior lien-creditors as collateral security for their respective debts. Soon after the execution of the trust-deed, Dr. John P. Hale, the principal

promoter and manager of the enterprise, as well as the largest stockholder of the company, went to Europe to effect a sale of the property. It was expected, and at one time there was a reasonable prospect, that a sale would be consummated at half a million dollars, but no sale was effected. About this time the property began to decline by reason of the destruction of the salt business, for the carrying on of which it was especially valuable, and its value continued to depreciate until it became manifest that the liens having priority over the coupon trust-deed would consume the greater part, if not the whole, of the property, and that the creditors holding liens under or subsequent in priority to said trust-deed would realize very little if anything upon their debts. In October, 1876, T. Stribling and others, judgment-creditors, filed their bill in the Circuit Court of Kanawha county against said company, all its lien-creditors, and others, to enforce their liens, ascertain the liens and their priorities against the real estate of the company, and to have said real estate sold to pay off said lien-debts. The cause was referred to Commissioner Gallagher, and afterwards to Commissioner Middleton, to report the debts, their respective liens, and priorities. After Commissioner Gallagher had filed his report, the defendants, B. H. Smith and F. F. Brooks, filed their joint petitions and the defendants, Bradford M. Noyes, trustee, and Jesse H. Grogan, filed their separate answers and cross-bills in the cause. On October 6, 1886, Commissioner Middleton returned his final report, to which several of the parties filed exceptions. The Circuit Court on January 7, 1887, pronounced a decree ascertaining and fixing the amount of the debts, the order and priorities of the liens on each of the several tracts or parcels of land, and directed all the land to be sold to pay off said liens. From portions of this decree B. H. Smith and F. F. Brooks have appealed, from other portoins D. C. Gallagher, substituted trustee for Bradford M. Noyes, has appealed, and from still other portions the defendant, Jesse H. Grogan, has appealed. The record is very voluminous, and the decree very long and complicated in its provisions, affecting and adjudicating many questions and interests unconnected with the claims of the appellants, and therefore, as none of the appellees make any complaint of

the decree or desire its reversal, I shall confine this opinion to a consideration and determination of the questions raised by the appellants, and only state such parts of the record as bear upon these questions.

*Appeal of Smith and Brooks.* By deed, dated December 22, 1870, B. H. Smith and F. F. Brooks conveyed to the Splint Coal Company 15 acres of bottom land, and their undivided interests in certain hill lands appurtenant thereto, in which deed they retained a vendor's lien to secure the payment of $13,000.00 purchase-money evidenced by five notes payable from one to five years after date. Immediately after the company executed the coupon trust-deed hereinbefore mentioned, Smith and Brooks accepted from the company 19 of its coupon bonds in satisfaction of the balance then due on said vendor's lien, and a due-bill for $248.20 held by Smith against the company, and they thereupon surrendered the said purchase-money notes, and executed and delivered to the company the following release :

" We, B. H. Smith and F. F. Brooks, hereby release the right reserved to us in a conveyance executed by us, and our respective wives, dated the 22d day of December, 1870, and recorded in the clerk's office of the County Court of Kanawha county, W. Va., in deed-book No. 27, pages 233 and 4, the sum therein secured being partly paid, and the residue adjusted by bonds or notes otherwise secured. Witness our hands and seals this 1st of December, 1875.

" BENJ. H. SMITH. [SEAL.]<br>
" FRED F. BROOKS. [SEAL.]"

This release was duly acknowledged by B. H. Smith on January 17, 1876, and on that day admitted to record in the clerk's office of Kanawha county. The petition of Smith and Brooks, before referred to, was filed April 21, 1881, to obtain the benefit of the vendor's lien retained by them in the said deed of December 22, 1870, or, if this be not allowed, that then so many of said coupon bonds as may be necessary be applied to the discharge of liens on the real estate of the company having priority over said coupon trust-deed before any of them are applied to debts not such prior liens. The grounds alleged for the relief thus prayed are (1) that the paper executed by them was not executed " in satisfaction of

the liens held by them, but as stated therein in adjustment by bonds or notes," and (2) that they received said coupon bonds and executed said paper-writing "upon the distinct and positive representation that all the prior liens upon the property conveyed by the trust-deed of December 1, 1875, were or would be fully discharged and satisfied," and that said representation was not performed.

The proof shows that B. H. Smith, who was an able lawyer and good business man, was fully aware of all the facts, that before he executed said release, he had examined the provisions of said trust-deed, and the resolution authorizing it, and that he accepted said coupon bonds and executed said release freely, upon his own knowledge of the facts, and urged others to do the same. In this transaction he acted both for himself and associate, Brooks. In his deposition taken in this cause, October 31, 1879, three years after this suit had been commenced, but before he filed his petition in it, the said B. H. Smith says: "I have sixteen of them, (coupon bonds,) not as collateral, but as absolute owner. Fred Brooks and I released certain liens against Splint Coal Company, and we took bonds in satisfaction of our debts or liens, as aforesaid. Brooks, I believe, has seven bonds owned by him, and also one other bond of which he owns one half and I the other half. He has them with him in Baltimore, I believe. Brooks and I sold some land to Dr. J. P. Hale, a portion of which is the property of Splint Coal Company, and took these bonds for the balance due us, releasing our lien thereon. The two bonds numbered 80 and 81 I got, as stated, for value received. I now produce all of said bonds except those in the hands of said Brooks."

This, it seems to me, is conclusive of the purpose of the transaction, and shows clearly that the parties intended to accept the coupon bonds in satisfaction of their vendor's lien, and that the paper-writing was intended to be, what it is in fact, an absolute release of the lien.

But it is insisted that the provisions of the resolution authorizing the trust-deed and the issue of the coupon bonds were conditional, and that, unless all the prior liens were released by the acceptance of coupon bonds, then any who may have accepted such bonds and released their liens are not bound. In determining this question, parol testimony, which does not

not prove actual fraud, is plainly inadmissible. The only testimony offered here is that certain representations were made as to the true construction of the terms and purpose of the resolution authorizing the issue of the bonds. There is no pretence of any fraud, but only an alleged misrepresentation of the purpose and effect of a written instrument which was at the time before the parties, and had been in fact seen and examined by them. The only question, then, is whether or not the written resolution is susceptible of the construction contended for by the appellants. Its words are : " The bonds to be used in exchange for and to take up the outstanding debts and obligations of the company, including the liens upon the land, whether placed by the company or by former owners of the land, so far as the same can be done, giving preference to the liens."

It is plain that the exchange included all debts of every nature due from the company, including not only the prior liens, but the liens placed by the company. These were all to be taken up so far as it could be done, and preference given to those holding liens. The language implies that it was anticipated that some of the lien-creditors would refuse to exchange their prior liens for coupon bonds, and therefore it provided for taking up such liens only so far as it could be done. And the words, " giving preference to the liens," would be meaningless, if nothing but liens were to be taken up and exchanged for bonds. The fact that the appellant, Smith, in this transaction, included a note of $248.20 for which he had no lien, and took a coupon bond or part of one for it, shows that he did not understand that the bonds were to be used wholly to take up prior liens. In his interpretation of this resolution I fully concur. It authorized the taking up of any and all kinds of indebtedness of the company, whether such indebtedness was evidenced by simple contract, liens, or otherwise, and the only limitation was that the liens should have the preference in the event the bonds were not sufficient to take up all the debts. For these reasons I am of the opinion that the decree must be affirmed as to these appellants.

*Appeal of D. C. Gallagher, Trustee.* At the time the Splint Coal Company acquired the legal title to a portion of

the land, known as "Lower Lorena" or lot D, which it embraced in the trust-deed of December 1, 1875, there was a trust-deed thereon to secure, among other debts, a bond for $2,750.00, payable to Bradford M. Noyes, trustee for Mrs. C. Noyes, and executed August 10, 1852, by D. J. W. Clarkson. Mrs. C. Noyes having died, Isaac N. Smith became her administrator, and the said bond was delivered to him as a part of the estate of Mrs. Noyes. On July 19, 1876, he took from the said company, in satisfaction of the balance due on said bond, the coupon bonds of the company, and executed to it the following paper-writing:

"CHARLESTON, W. VA., July 19, 1876. I have this day received from the Splint Coal Company four of their coupon bonds, Nos. 78, 79, 80, 81, for $500.00 each, in settlement of $2,000.00, part of balance due as of June 1, 1876, on note of $2,750.00, executed August 10, 1852, by D. J. W. Clarkson to B. M. Noyes, trustee for Mrs. Cynthia Noyes, and payable October 1, 1860, with interest from October 1, 1859; also received coupon bond No. 83, for $500.00; $211.74 is in full settlement of above described note as of 1st June, 1876, and said bond No. 83 is partly for settlement of $158.93, balance due on note of said Clarkson as of 1st June, 1876, held by Mrs. Ellen Rand, and who has this day received from Splint Coal Company their coupon bond No. 82 for $500.00, which settles in full ($658.93) the balance due as of 1st June, 1876, and the said Clarkson note held by her; and, the said notes being thus fully settled, the lien of the trust-deed securing said note is to be released as to them as to $2,211.70."

This paper is signed "ISAAC N. SMITH, Adm'r of Mrs. C. Noyes, dec'd. SMITH & KNIGHT, Attorneys for Mrs. Ellen Rand."

Of the six bonds thus received, No. 82 was for an individual debt of Mrs. Ellen Rand, and has no concern in this controversy. No. 83 was partly for Mrs. Rand and partly for the Noyes debt, and Nos. 78, 79, 80, and 81 were the only ones received wholly on account of the Noyes debt. None of these last-mentioned four bonds has been filed in this cause by Isaac N. Smith, administrator, Bradford M. Noyes, trustee, or his successor, D. C. Gallagher. Nos. 80 and 81 have been filed by B. H. Smith, and it is proved that he is the absolute owner of them, they having been passed by Isaac N. Smith, administrator, to Bradford N. Noyes, as distributee of Mrs.

C. Noyes, and by him sold and transferred, and one of the others was sold and delivered by said Noyes to Arnold and Abney, in August, 1876. There is nothing in the record to show what became of the other Noyes bond, or who is the owner of it. It appears, therefore, that Noyes, trustee, when he filed his cross-bill in this cause, in March, 1881, to repudiate the action of Isaac N. Smith, administrator, by which coupon bonds were taken in satisfaction of said Noyes' debt, had very little if any interest in said debt, nor has his successor, D. C. Gallagher, trustee, shown any interest other than that of said Noyes. But conceding the right of the trustee to assail said transaction, he has shown no grounds to set it aside. It is contended—*first*, that Isaac N. Smith, as administrator, had no authority to accept the coupon bonds, and release the lien on the land, and *second*, that he did not in fact release the lien. It is not denied that the Noyes debt came into the hands of Smith as assets of the estate of Mrs. Noyes, and that he had such control over it as he could have over any other estate which belonged to his decedent. It is elementary law that an administrator has full control of the personal estate of his decedent. He may collect the debts, or he may sell them, if the exigencies of the estate require it, or he may exchange a chose in action for the note of a third person. In either of these instances the administrator will be charged in his accounts with the debt so collected, sold, or exchanged. *Anderson* v. *Piercy*, 20 W. Va. 282, 324; 2 Lomax Ex'rs 295; *Bass* v. *Chambliss*, 9 La. Ann. 376. The administrator is not complaining here and the beneficiary in his cross-bill expressly states that he " does not charge fraud upon the administrator in this matter, for he believes the administrator supposed he was acting for the best interest of the estate." If there was no fraud on the part of the administrator, who had all the information the company had in respect to this transaction, there could have been no fraud on the part of the company.

The question recurs, did the administrator accept the bonds in satisfaction of the original debt? The cases of *Stuart* v. *Abbott*, 9 Gratt. 252, and *Coles* v. *Withers*, 33 Gratt. 186, are relied on to show that the action of the administrator did not release the lien of the original debt. The first

case simply decides that a contract by one of several executors to release a lien on real estate will not be enforced in equity against the other executors. In _Coles_ v. _Withers_ the court held : " The question of whether a lien reserved is surrendered, is one of intention on the part of the vendor, under the circumstances of each case, and, there being nothing in this case to show such intention, the lien is not surrendered and must be recognized as still existing." This I regard as a correct statement of the law. The question then, here, is whether there is anything to show that Isaac N. Smith, administrator, intended to release the lien of the original debt. This, it seems to me, is put beyond controversy by the written contract of said Smith, which, after reciting the consideration and details of the transaction, and stating that he had received coupon bonds "in full settlement" of the note of $2,750.00, concludes as follows : "The said notes being thus fully settled, the lien of the trust-deed securing said notes is to be released." The words, " is to be released," while they do not operate as a legal release, do clearly show an intention to release the lien, and therefore amount to an equitable release, which is valid and effective in a court of equity. It is also sought to set aside this settlement and release upon the same grounds on which it was attempted to set aside the release executed by the appellants, B. H. Smith and F. F. Brooks. For the reasons stated in considering that appeal we hold there is no merit in this ground. The decree as to this appellant must also be affirmed.

_The Appeal of Grogan._ On July 8, 1882, Jesse H. Grogan filed his answer and cross-bill in this cause, the substance of which is that, in 1870, James M. Laidley sold to the Splint Coal Company several tracts or parcels of land, part of the lands embraced in the coupon trust-deed of December 1, 1875, hereinbefore mentioned, and as a part of the purchase-money therefor said company executed to Laidley two notes of $1,750.00 each, dated December 17, 1870; that Laidley assigned said notes to Grogan, and represented to him that a vendor's lien was retained on the land to secure their payment ; that afterwards said Laidley and others conveyed this and other lands to said company by deed in which no

vendor's lien was retained; that the company had notice that he had these bonds, and that they were a lien on said land at the time it was conveyed to it, and that said notes are a lien upon the land as against said company; that the trustees in said coupon trust-deed had like notice of his rights against said land; that, by some agreement between the company and Joseph Shields, the beneficiary in a prior trust-deed given him by Laidley on this land, the Shields trust-lien was to be paid off by said company, and by like arrangement a lien of the Merchants' Bank was to be paid off by said company; that by deed dated October 1, 1862, said Laidley had conveyed said land to a trustee for the benefit of his wife and children and that this deed was voluntary and void as to the creditors of said Laidley; that the deeds from said children to said company for said land is also fraudulent and void; that the deed, dated December 5, 1873, executed by Emma S., Anna V., Madison M. and Juliet S. Laidley, by Alexander T. Laidley, their guardian, which retains a vendor's lien upon said land to secure to each of said children the payment of a bond of $1,760.00, is also void; and that the aforesaid coupon trust-deed of December 1, 1875, is likewise fraudulent and void; that at the fall term, 1875, of the Circuit Court of Kanawha county, he obtained a judgment against said company upon one of said bonds for $2,-260.07, with costs; and that at the June term, 1876, of the County Court of said county, he obtained a judgment on the other bond for $1,995.60, and costs. He prays that said J. M. Laidley, A. T. Laidley, guardian, Joseph Shields, the Merchants' Bank, and others shall each for himself answer under oath every allegation of the cross-bill applicable to him, etc.

The defendants, J. M. Laidley, Joseph Shields, N. B. Cabell and others, answered said cross-bill. J. M. Laidley answered that if he represented to Grogan that the notes assigned to him were secured by vendor's liens, such representation was then true, but that he subsequently, "in an unguarded moment," conveyed the land without retaining any such lien. Joseph Shields and other defendants answered denying specifically all the material allegations of the cross-bill which could in any way affect the priority, validity, or the security of their respective liens or debts.

No parol testimony was offered to sustain any of the allegations of said cross-bill, and the documentary evidence in the record wholly fails to show that there was any fraud or grounds upon which Grogan could be entitled to relief by reason of the assumed facts alleged in his bill. It follows, therefore, that the Circuit Court did not err in dismissing said cross-bill.

Grogan also excepted to the report of the commissioner, but some of these exceptions are too vague and general to be effective for any purpose under the settled rule of this Court. *McCarty* v. *Chalfant*, 14 W. Va. 531. Others are based upon extrinsic facts, which the exceptant failed to prove or make a part of the record; and others still relate to matters which could by no possibility benefit the exceptant. While it is possible these latter exceptions, if sustained, might affect the rights of some of the appellees, still as they do not relate to or affect the rights of Grogan, they will not be considered by this Court at his instance. The whole of the record does not appear in the transcript before us, and it would therefore be not only gratuitous, but taking the hazard of doing injustice, for this Court to undertake to decide questions not insisted upon by any party having the right to call for their decision, and especially when the parties having such right have expressly waived it, as all the appellees have done in this cause. I am therefore of opinion that the rights of the appellant, Grogan, were not prejudiced by the action of the Circuit Court in respect to any of the matters hereinbefore considered.

But it does appear, however, by the report of the commissioner, that the first judgment of Grogan was recovered November 19, 1875, and docketed February 9, 1876, within 90 days after its date, thus giving it priority over the coupon trust-deed of December 1, 1875; and it appearing that this judgment has by inadvertence been wholly omitted from the final decree, it is therefore ordered, according to our statute (section 6, ch. 134 Code,) that the said decree of January 7, 1887, be corrected by inserting the amount of this judgment at its aggregate amount of $3,644.61 as of December 1, 1885, as the fifth judgment lien on the real estate of the company, giving it priority over the lien of the said coupon trust-deed, and following next in priority to the judg-

ment of the Second National Bank of Ironton. For the reasons aforesaid it is ordered that the decree of the Circuit Court of January 7, 1887, be, and the same is, corrected in the particular indicated, and that said: decree, so corrected, be affirmed.

AFFIRMED.