## CHARLESTON.

Gunn v. Ohio River R. Co.

Submitted September 12, 1896—Decided December 9, 1896.

1. DEMURRERS TO EVIDENCE,
    The syllabus in *Garrett v. Ramsey*, 26 W. Va. 345, upon demurrers to evidence, approved.

2. INFANTS—CONTRIBUTORY NEGLIGENCE
    A child of very tender years is not chargeable with contributory negligence.

3. RAILROADS—TRAINMEN—ORDINARY CARE.
    The engineer and fireman of a railroad train must keep a care-

ful lookout on the track ahead to discover persons and animals upon it, and use ordinary care to avoid injury to them.

4. RAILROADS—INFANTS.

While it may be assumed by the engineer that a person walking upon a railroad track will get off it in time to save himself from injury from a train, yet that is not the rule as to children of very tender years, or persons plainly and obviously disabled by deafness, intoxication, sleep, or other cause from taking care of themselves.

5. PARENTS' NEGLIGENCE.

Parents' negligence. When it prevents recovery for injury to children.

6. DEMURRER TO EVIDENCE.

Demurrer to evidence, principles of.

W. R. GUNN, C. E. HOGG and J. E. BELLER for plaintiff in error, cited 20 W. Va. 223, 345; 24 W. Va. 551; 33 W. Va. 152; 30 W. Va. 27; 8 W. Va. 553, 558; 25 W. Va. 570, 622, 641, 642; 33 W. Va. 135, 320; 38 W. Va. 645; 6 W. Va. 508; 18 W. Va. 579; 20 W. Va. 46; 26 W. Va. 345, 455; 10 W. Va. 546, 560; 12 W. Va. 116, 123; 36 W. Va. 173, 174, 165; 37 W. Va. 197, 421; 9 W. Va. 252, 271; 17 W. Va. 190, 202; 15 W. Va. 628; 32 W. Va. 436, 487; 20 S. E. Rep. 550; 99 Pa. St. 398; 126 Mass. 877; 65 Ala. 74; 56 Ala. 507; 16 W. Va. 308; 25 W. Va. 692; 39 W. Va. 658; 21 W. Va. 224, 709; 2 Gratt. 18, 28; 25 Kan. 38; 66 Mich. 390; 75 Mo. 595; 5 Tex. Civ. App. 195; 114 N. C. 699; Deer. Neg. § 261; Pierce Rds. p. 336; 60 Mo. 475; 34 Am. & Eng. R. R. Cas. 318; 38 Am. Rep. 67; 38 Neb. 91; 95 Mo. 286; 94 Mo. 600; 58 Tex. 27; 6 Am. & Eng. R. R. Cas. 11; 8 Am. & Eng. R. R. Cas. 65; 4 Am. & Eng. R. R. Cas. 562; 28 Am. & Eng. R. R. Cas. 565; 52 N. J. L. 446; 21 L. R. A. 76 and note; Beach, Contrib. Neg. § 42; 78 Iowa, 396; 17 Wall, 657; 4 Am. & Eng. Enc. Law, 88; 21 Wend. 615; 88 Va. 267; 22 Vt. 214; 2 Mackey (D. C.) 437; 43 La. Ann. 63; 64 Mich. 494; 85 Mich. 280; 109 Ind. 179; 5 Rand. 1, 2; 3 Leigh, 147; 23 Gratt. 619-38; 31 Gratt. 812; 29 W. Va. 98; 30 W. Va. 228; 35 W. Va. 389; 106 Ill. 563; 18 Ill. App. 142; 104 Ind. 293; 102 Ind. 146; 32 Kan. 533; 1 Shearm. & Red. Neg. §§ 75, 130; Whart. Neg. § 311; 2 Wood Ry. Law, 1284; 31 Kan. 1; 19 Kan. 382; 2 Tuck. Comm. 291, 292; 18 Iowa, 277; 4 Iowa, 63; 7 Cranch, 565; 11 Serg. & R. (Pa.) 329; 1 Stew.

(Ala.) 320; 1 Cranch, C. Ct. 60; 2 Cranch, C. Ct. 373; 12 Fla. 552; 3 Ill. (2 Scam.) 236; 83 Iowa, 270; 13 Mo. App. 462; 5 Am. R. R. & Corp. Rep. 68; 39 Minn. 413; 96 Mo. 509; 34 W. Va. 764; 21 Wend. 615; 34 Am. Dec. 273; 52 N. J. L. 446; 27 Gratt. 455; 18 Ohio St. 408; 59 Tex. 64; 113 Pa. St. 412; 22 Vt. 214; 26 Conn. 591; 92 Pa. St. 450; 83 Ala. 371; 17 Wall. 657; 41 W. Va. 511; Beach. Con. Neg. § 130; Bish. Non-Con. Law, § 352; 66 Miss. 560; 85 Mich. 280; 57 Pa. St. 172; 113 Pa. St. 412; 24 Ohio St. 631, 670; 43 Ohio St. 91; 60 Tex. 205; 33 Ill. App. 450; 138 Ill. 370; 83 Ala. 381; 16 Neb. 139; 88 Va. 267; 78 Iowa, 396; Beach. Contrib. Neg. (2d Ed.) § 131; 2 Thomp. Neg. 1191; Whart. Neg. § 310; 3 Lawson Rights, Rem. & Pr. 2135; Bish. Noncont. Law, §§ 578-580; Ray, Neg. Imp. Duties, 732-733; 98 Ind: 186; 116 Ind. 121; 43 Ohio St. 91; 36 Ohio St. 86; 105 Ill. 364; 113 Pa. St. 544; 66 Md. 149; 46 Mich. 596; 39 N. W. Rep. 516; 35 Minn. 522; 47 N. J. Law, 161; 66 N. Y. 11; 71 N. Y. 228; 84 N. Y. 247; 88 Ga. 60; Code, c. 130, ss. 5, 6; 25 L. R. A. 564; 29 L. R. A. 145; 5 L. R. A. 340; 100 N. C. 240; 31 W. Va. 82; 13 W. Va. 230; 15 W. Va. 323.

H. P. CAMDEN, V. B. ARCHER and JAS. B. MENAGER for defendant in error.

H. P. CAMDEN:

I.—*In this State a railroad company owes to a child of apparently tender years the duty of observing ordinary precaution to discover the child, if upon the track, and to avoid injuring the child after it is seen.*—36 W. Va. 173; 39 W. Va. 56.

II.—*If unexplained evidence shows that the child could have been discovered in time to have avoided the accident, if a reasonable look out had been kept then it is a presumption of law that such look-out was not kept.*—34 W. Va. 541.

III.—*Ordinary care is a variable quality, and whether a look-out is reasonable, or not, must be determined by the circumstances of each case.*—36 W. Va. 172; 47 Pa. St. 300; 47 Am. Rep. 709; 55 Ill. App. 588; 38 Neb. 90; 114 N. C. 699; 2 Woods, R'ds § 320.

IV.—*The evidence to justify a verdict need not exclude every possible hypothesis of due care, but it must exclude every probable one.*—8 C. B. (N. S.) 268; 3 App. Cas. 1155.

V.—*In order to recover in this case it must be shown that the child could have been seen by the engineer a sufficient distance from the place of disaster, so that the train could have been stopped.*—Woods, Ry. Vol. 2, § 320; 24 S. E. Rep. 698.

VI.—*Presumptions to be legally sufficient to rest verdicts upon must be conclusions from facts proven or admitted in the case.*—92 Pa. St. 434; 29 Barb. 234; 58 Md. 221; 56 Wis. 338; 100 Pa. St. 144.

VII.—*The question of negligence is to be determined irrespective of the wealth or poverty of the parent.*—Pat. Ry. Ac. Law, § 81; 2 Red. Ry. Cas. 501; 34 Ill. App. 215; 103 Ind. 328; 4 West (Ind.) 250; 7 Ont. L. J. 311; 104 N. Y. 669.

VIII.—*It is contributory negligence per se for a parent to permit an infant of tender years to play upon the cars or track of a railroad company.*—15 Am. & Eng. R. R. Cas. 403; 2 Am. & Eng. R. R. Cas. 4; *Id.* 12; 4 Am. & Eng. R. R. Cas. 608; 83 Ala. 371.

IX.—*In this case the question of negligence is not one for a jury.* —Thomp. Neg. Rules, Dec. Op. p. 365 and cases there cited; 22 Wall, 121; 17 Mich. 99; 109 U. S. 478; Shear. & R. Neg. § 56, note 2 p, 69.

X.—*Contributory negligence of the parent will preclude a recovery unless the trainmen, after the child was actually discovered, omitted reasonable precaution to avoid the injury.*— Shear. & R. Neg. § 483, note 2; 33 N. W. Rep. 867; 56 Cal. 513; 4 Am. & Eng. R. R. Cas. 608; 24 S. E. Rep. 698.

V. B. Archer, cited 36 W. Va. 96, 171, 178, 179; 78 Ky. 621; 34 W. Va. 764; 26 W. Va. 455, 2d pt. syl.; 10 Leigh, 155-64; 38 W. Va. 475, 669, 711; 37 W. Va. 38; 23 W. Va. 229; 95 Pa. St. 398; 8 Wright, 278; 31 P. F. Smith, 366; 25 P. F. Smith, 265; 4 L. R. A. 126; Beach, Con. Neg. (1st Ed.) p. 150, § 48; 9 W. Va. 252, 270; 17 W. Va. 190; 25 W. Va. 570; 32 W. Va. 436; 35 W. Va. 438, 562; 40 W. Va. 331; 23 W. Va. 229; 25 N. Y. 361; 45 N. Y. 549, 1st pt. syl.; 1 Cow. 110; 44 Am. Dec. 633; 16 Pet. 331.

Brannon, Judge:

Two little boys, Henry C. Mayes, not quite five years old, and Luelza Mayes, about six years old, were killed by a

train on the Ohio River Railroad, and this is a suit by the administrator of Henry C. Mayes against the Ohio River Railroad Company to recover damages for his death. The briefs of counsel are elaborate and able, laying down all the propositions arising, and citing all the law necessary for decision, and have been very helpful in the decision of the case.

If Henry C. Mayes had been an adult, no recovery could be had for his death, as he met his sad and early death on the railroad track, and the defense of contributory negligence would defeat recovery; but a child of the tender years of this child is not chargeable with contributory negligence, for want of judgment, discretion, and presence of mind to know and avoid danger. *Dicken* v. *Coal Co.* (this term) 41 W. Va. 511 (23 S. E. 582); *Westbrook* v. *Railroad Co.* (Miss.) 6 South. 321; *Bottoms* v. *Railroad Co.* 114 N. C. 699 (19 S. E. 730); *Summers* v. *Brewing Co.* (Pa. Sup.) 22 Atl. 707. The law is clear that those in charge of a train must, by keeping up a reasonable lookout, use fairly ordinary care to discover animals and persons on the track, both to save them and passengers from injury. The public interest and necessity, not merely the company's, demand that the company have sole possession of its track; but, as people live and move along the route, they do go upon the track; children, in their thoughtlessness and indiscretion, will go upon it; stock will wander upon it; and sheer necessity calls for such care as is exacted by this rule. *Gunn* v. *Railroad Co.* 36 W. Va. 165 (14 S. E. 465); 2 Wood, Ry. Law, § 320; opinions in *Raines* v. *Railroad Co.* 39 W. Va. 50 (19 S. E. 565). Some courts hold that no duty lies on the company to look ahead for persons--on the track, as it has exclusive right to its track except at crossings, and they are trespassers; but we have held that there must be a lookout even for live stock and ordinary care to prevent injury to it. *Layne* v. *Railroad Co.* 35 W. Va. 438 (14 S. E. 123) and cases. And, certainly, the same care would be required so far as infants, deaf and other disabled persons are concerned, if not as to others. But our Court has settled this in cases above cited. If a child trespassing on a railroad track is struck by an en-

gine, the company is liable if the engineer, by such careful and vigilant lookout as is consistent with other duties, could have seen the child in time to prevent the accident. *Railroad Co.* v. *Grablin*, 38 Neb. 90 (56 N. W. 796 and 57 N. W. 522); *Bottoms* v. *Railroad Co.* 114 N. C. 699 (19 S. E. 730); 2 Wood, Ry. Law, § 320. So if the child is going towards the track, or running near it, evidently going on it. An adult seen upon the track, the presumption is that he will get off, but not so with little children. When they are seen on the track, the duty is to stop and save them. *Raines* v. *Railroad Co.* 39 W. Va. 50 (19 S. E. 565); Wood, Ry. Law, § 320; *Bottoms* v. *Railroad Co.* 114 N. C. 699 (19 S. E. 730). Such is the law of the subject. What are the rights of the parties under it upon the facts? The defendant withdrew the case from the jury by a demurrer to the evidence. This has an important bearing as certain principles apply in deciding a case on such demurrer.

A demurrer to evidence by the defendant admits all that can reasonably be inferred by a jury from the plaintiff's evidence, and waives all the defendants contradictory evidence, or evidence the credit of which is impeached, and all inferences from the defendant's evidence that do not necessarily flow from it. The evidence must be interpreted most favorably to the demurree, so that he may have all the benefit which a verdict in his favor by the jury would give him. In determining the facts inferable from the evidence, where there is grave doubt, those inferences or conclusions most favorable to the demurree will be adopted; and, unless there is a decided preponderance of probability or reason against the inference that might be made in favor of the demurree, such inference ought to be made in his favor. If the evidence is such that, if there were a verdict in favor of the demurree, the court ought not to set it aside, then, on the demurrer to the evidence, the court ought to give judgment against the demurrant. *Stolle* v. *Insurance Co.*, 10 W. Va. 546; *Garrett* v. *Ramsey*, 26 W. Va. 345; *Franklin* v. *Geho*, 30 W. Va. 27 (3 S. E. 168); *Fowler* v. *Railroad Co.*, 18 W. Va. 579. Keeping in mind these principles, let us look at the evidence to see what inferences ought to be made from it.

The children were killed on a little trestle over a small stream, while sitting on the guard rail. The turning question is: Had they been there long enough before the train struck them to have enabled the trainmen to see them in time to save them, as the plaintiff claims they had been, or did they go upon the trestle when the engine was within fifty feet or a very short distance of them, too short to save them, as the defendant claims? The engineer says he could see the track for half a mile or more, as it was straight, and he was looking out, and could see over the trestle, and could see nothing on it; that there were some willows near the trestle, which cast a shade over part of it. He says he saw nothing till within forty or fifty feet of the trestle, when he caught a glimpse of something between the willows or on the trestle (he could not say which) when he sounded the whistle, and it moved, and he saw it was children. He said they were not before on the track to be seen. They were there when killed. We know this. When did they go there? They were sitting astraddle the guard rail when the engine struck them, indisputably. This leaves the inference that they had been there some time. If interest in the train called them from the willows, would they likely have sat down or stood up, alive with interest? If they had so recently gone upon the trestle, is it not reasonable to say that the engineer, on the lookout, as he says, would have seen them—two children walking? The train was dashing on at thirty miles an hour, and as it would take some time for them to go upon the trestle, and sit down, they must have been on it some time before the engine was within fifty feet; that is they must have been there when the engine was further distant than that distance. The engineer does not say he saw them going on the trestle, though we would infer from his evidence that they suddenly went upon it. Would he not have seen them that bright June morning at eight o'clock, with a straight track and unimpeded view for half a mile? If, as he says, the willows shaded one corner of the trestle, tending to prevent his seeing them sitting still, would he not have seen two children moving, in the act of going upon the trestle.

The fireman had been engaged in coaling the engine, and,

when he finished, he saw the children sitting on the trestle, forty or fifty feet ahead. Going no further, taking these facts and the statements of these trainmen, I say that the inference that the children were sitting on the trestle some time before the coming of the train is more reasonable than that they suddenly appeared upon it, just before they were struck. And remember, in doubt, we must make the inference most favorable to the demurree. The engineer does not contradict this inference by telling us that he did see them all at once go upon the trestle. The inference does not necessarily flow from his evidence that they did all at once go upon the trestle. Unless there is a decided preponderance of probability or reason in favor of this sudden coming of the children upon the trestle, we can not make it, but must make the other, under a demurrer to evidence.

But add other evidence: A witness says he passed over this trestle, and saw the children sitting upon it, and the train came, in perhaps, fifteen minutes, he thought, but was not certain as to the time. There they were sitting when he last saw them. There they were sitting when the locomotive struck them. May we not say, there they were yet sitting when it struck them? Had they ever moved? Counsel argues that we can not make this inference because the uncontradicted evidence of the engineer and fireman is that they were on the lookout, and did not see the children, and we can not draw inference against positive evidence. But the facts argue against this. The fireman had not looked for a fourth of a mile till he got within forty five or fifty feet, when he saw them. The engineer might have looked, but failed to see. The children might have been there nevertheless. He says the morning was foggy. If so, that would likely prevent his seeing; but discard that, as in conflict with several witnesses who say it was sunshiny and bright. The engineer says that the willows shaded the trestle. That might have prevented his seeing the children, and yet they be sitting there. But other evidence contradicts him as to the willows shading. Bear in mind that as yet we are confining ourselves to the question whether those children were on the trestle so as to be seen some time before the casualty, not upon the ques-

tion whether the engineer did see them, or whether he used diligence and failed to see them. We therefore conclude that it is fair upon this evidence to say—at least not unfair or unreasonable to say—the children were on the trestle so as to be seen long enough before the train came, to be seen and saved, so far as distance is concerned.

But the defendant would still say that the evidence shows a careful lookout, and, if the children were there, they were not seen by this careful lookout, and that ordinary care is all that can be demanded, and, if it fails, the company is not responsible. They say the evidence showing this ordinary care to avoid calamity is uncontroverted, and we can not find in its face a want of ordinary care. We do not say they were seen and purposely hurt, but was there due care? Was there that care required by law? This is now our question, seeing that those children were upon the trestle, and the deadly train approached them. There was a curve in the road, and between the curve and the trestle a straight level track, with clear view for full half a mile; and the morning a clear bright morning of June, the time eight o'clock, the children (two of them) sitting on a guard rail on a trestle, clearer to view, perhaps, than if elsewhere on the track, and the engine such as was capable of stopping the train in its own length, the fireman said, a witness for plaintiff, though the engineer, a witness for defendant, denied this. Now, it would be pretty lenient under these circumstances, so favorable for seeing and saving these children, and pretty dangerous as a rule, to say there was all due care. But here an important consideration enters into this question of the presence or absence of due care, and this that it is one of fact, proper for a jury; so, also, what was a fair inference from all the circumstances as to when the children were first on the trestle; so, also, the credibility of witnesses as to seeing the children, and of watchfulness. A jury is to judge of the weight of evidence, and make inferences and deductions. Now, suppose there had been a verdict for the plaintiff. Could we set it aside? We do not think we could. Then the rule of decision upon a demurrer to evidence would require judgment upon it for the plaintiff. There is stronger reason for holding the com-

pany for want of close lookout, and more opportunity to discover the chidren, than was the case with the mule in *Heard* v. *Railroad Co.*, 26 W. Va. 455, and that was not on a demurrer to evidence, while this is.

The counsel of defendant seeks to relieve it from liability because of imputed negligence; that is, that the father and mother of these children allowed them to go about the track, and thus expose them to danger, and as the father is sole distributee of his child, and will get the money recovered, the suit can not be maintained, as his negligence is imputed to the child. But we do not think that, if that doctrine be good law, a sufficient basis exists for its application. There was not that omission of ordinary care as persons of ordinary prudence deem adequate care with their children. *O'Flaherty* v. *Railway Co.*, 100 Am. Dec. 343. The parents of these children seem to be poor, and therefore unable to employ a nurse to attend and guard their children—a fact bearing on the degree of care demandable of them. Though living near the railroad, yet not so near (three hundred or four hundred yards) as to require such close constant watch. They warned their children against going on the railroad. They did know that they had on one or more occasions been on the track, and warned them against going there, and the father once whipped this little boy for doing so. The mother sent them that morning to turn the cows up the road, and come back by the corn lot and garden—a different direction from the trestle, I understand. They could not pen or imprison their children from light and air and exercise and play. They could not always keep unfailing watch upon them. That degree of negligence is not shown which would warrant us in denying recovery on this ground. This renders it out of place to discuss the question of imputed negligence; that is, that, though no negligence could be charged to the child, yet, as the parent was negligent in exposing him to danger, that shall be imputed to the child, and made his negligence, and forbid recovery by merely the representative of the child. This doctrine began in the supreme court of New York in 1839, with *Hartfield* v. *Roper*, 21 Wend. 615, holding that where a child of tender years is in a highway unattended,

and is run over by a traveler, the traveler is not liable to even the child, unless the injury was voluntary or from culpable negligence, because the law attributed the negligence of the parents in allowing the child to be in a place of danger to the child, so as to prevent recovery by the child. Since that case the subject has undergone elaborate and refined discussion in the courts, and the conflict is intense. Some courts repudiate it; some adhere to it. It is said to be now against the weight of authority. Virginia has repudiated it in *Railroad Co. v. Ormsby*, 27 Gratt. 455, and *Railroad Co.* v. *Groseclose's Adm'r*, 88 Va. 267 (13 S. E. 454.) From the reading I have done, in an incomplete examination of this point, my individual opinion is that, where the child is living and suing, the negligence of the father can not be imputed to it to affect its action; but where the child is dead, and the father is, by law, sole distributee of the child, as he gets the recovery and is guilty of the negligence producing the accident, that will bar recovery, no matter who is administrator, unless the defendant's act be willful or wanton. Of course, where the father sues for loss of his child's service, his own negligence will bar him. See Beach, Contrib. Neg. § 42; 1 Shear. & R. Neg. § 74; Bish. Noncont. Law, § 352; 4 Am. & Eng. Enc. Law, 88; *Wymore* v. *Mahaska Co.* 78 Iowa, 396 (43 N. W. 264) citing the many conflicting cases. *Casey* v. *Smith* (Mass.) 25 N. E. 734; *Westbrook* v. *Railroad Co.* 66 Miss. 560. (6 South. 321); *Railway Co.* v. *Vining*, 92 Am. Dec. 269; *Railroad Co.* v. *Snyder*, 98 Am. Dec. 175, and note; note to *Freer* v. *Cameron*, 55 Am. Dec. 667; *Ihl* v. *Railroad Co.* 7 Am. Rep. 450; *Grant* v. *City of Fitchburg* (Mass.) 35 N. E. 84; *Wiswell* v. *Doyle, Id.* 107; *Johnson* v. *Railway Co.* (Pa. Sup.) 28 Atl. 1001.

Judgment reversed, and judgment for plaintiff on the demurrer to evidence.

## ON REHEARING.

I have always regarded this case as one which lawyers call "a close case." We therefore granted a rehearing. An able reargument has not changed the result expressed in the above opinion. I repeat what is said in that opinion, that imperious necessity demands that railroad com-

panies, through their employes, keep careful lookout for people and obstruction, on the track. Railroads must be accorded a place on the face of the earth to answer the needs of society, but all the people must also use the face of the earth, and we must adopt rules preservative of the rights of all, so far as is practicable. It is a high necessity, looking to the safety of passengers and other people, that those in charge of trains, flying with lightning speed through great stretches of country, shall keep such lookout to discover obstructions and persons disabled from infancy or other cause, found on the track. JUDGE HOLT emphasized this in *Dicken* v. *Coal Co.* 41 W. Va. 511 (23 S. E. 582) in saying that railroads of all kinds have found by experience that unrelenting watchfulness is requisite to keep tracks safe and clear and they must act on the assumption that they may be brought in contact with children and adults. Can we find that such watchfulness was exercised in this case? That is the crucial question. It is fairly plain that, under the evidence, we must find that the children were sitting on the trestle long enough before the engine struck them to have been seen and saved, had a due lookout been kept; but, having so found, the next question is, was there a proper lookout? This is the more difficult question. The children were killed, but that alone is not enough to charge the company, unless it was negligent, and, to show that, it must appear that they could have been seen by the trainmen a sufficient distance from the place of disaster so that the train could have been stopped. Wood, Ry. Law, 1475. And just here counsel tell us that, by the uncontradicted evidence of the engineer and fireman, a watch was kept, without discovery of the children until within fifty feet of them, and that we can not say, therefore, that such watch was not kept.

This brings up the question whether a court, upon a demurrer to evidence, is bound infallibly to take for true a statement of a witness upon a given fact, only because no witness contradicts him in that statement. The rule is that, upon demurrer to evidence, the court rejects only the oral evidence of the demurrant that is contradicted or impeached. But what do you mean by contradicted or

impeached? Do you limit the contradiction to contradiction by witnesses? Suppose facts and surrounding circumstances contradict him as to the particular fact, though no witness in words does. If a man who is required to watch in order to see an object says he did watch, but did not see it, when we know the object was there to be seen, and visible and there was no obstruction to sight, and plenty of light, are we bound to say that he did watch, and failed to see? When two children are on a railroad track in broad day light, and an engine is approaching them, with nearly a half mile of unobstructed level track in which to discover them, and a trainman says he looked out that distance without seeing them, is a court bound to say that he did keep such lookout, and did not discover them, merely because it is upon a demurrer to evidence, when a jury need not have so found? We can not here reject the witness, nature, telling us that the sharp eye of an engineer, more surely than an unpracticed eye, will almost certainly see, in bright daylight, a rock, log, or person ahead on a level, unobstructed track. These considerations answer the question of counsel as to what facts justify the conclusion that the children could have been seen when the train was three or four times as far away as when the engineer and fireman first saw them. Counsel rely with confidence on the statement of the engineer that he watched carefully, and that no evidence contradicts him. No witness does; but how as to other settled facts and circumstances? Shall we forget them? When it is said that, on demurrer to evidence the party demurring waives his evidence that is contradicted by that of his adversary, we do not mean that if the demurrant has a witness deposing to a given fact, and the demurree has no witness contradicting that particular fact, the court must take that fact as proven by an uncontradicted witness, ignoring other facts and circumstances going to disprove that fact. A jury could find against that fact on the strength of other facts and circumstances by saying that such facts and circumstances contradicted the witness; and must a court be denied the power which a jury could exercise? Surely not, because it has often been held that, if the evidence be such as, if the

jury had found against that fact, the court should not set
the verdict aside, then a court, upon a demurrer to evi-
dence, ought to find against that fact. In such case the
evidence of the witness is not regarded as uncontradicted.
So that the contrary of the particular fact stated by him is
fairly inferable from all the facts and circumstances proven
by the demurree, this evidence is deemed contradicted,
under the rule of demurrer to evidence that demurrant
waives "all his evidence that at all conflicts with that of
the other party, admits the truth of his adversary's evidence,
admits all inferences of fact that may fairly be deduced
from that evidence, and submits it to the court to deduce
such fair inferences." *Clopton* v. *Morris*, 6 Leigh, 278. It
is only that evidence of demurrant that does not conflict
with the evidence of his adversary, nor with the fair and
reasonable inferences from it, that is regarded.

In *Green* v. *Judith*, 5 Rand. 1, 19, 20, Judge Carr laid down
principles solving more nearly the exact point we have than
any case I see, saying: "What part is he to be considered as
waiving? First. All that contradicts that which is offered
by the other party; that is, for instance, where a fact is
proved circumstantially on one side to be so, and on the
other side to be otherwise, this latter, being the demur-
rant's evidence, must be waived. * * * The demurrant
can not say: 'It is true, according to the evidence against
me, I ought to admit so and so, as you demand, but my
evidence shows I ought not; for, according to it, the fact is
otherwise, and my witness is not impeached.' He must
waive his evidence, or the court must do it for him, as to
this matter." Apply these principles in this case. The
nature of the case, its circumstances, show that the child-
ren could have been seen by a careful lookout in time to
save them, and a jury could say, and we can say, there
was no lookout; but because a witness says there was, and
he is not specifically contradicted by another witness say-
ing the former did not look ahead; but was talking or
looking in another direction, we must say he did look
ahead, though the natural facts tell us he could have seen
the children had he been looking. The rule of demurrer.
to evidence says the demurrant waives that evidence; that

is, the court disregards it. The plaintiff's showing, standing alone, denies that there was such lookout, and a jury could on it have so found, and, if it had, we could not set the finding aside; and shall we deny the plaintiff the benefit of a finding which he might have lawfully secured by a jury when the defendant has withdrawn the case from a jury? That is the test, and the cases say not. *Fowler* v. *Railroad Co.* 18 W. Va. 579.

And here, upon cases cited in the above opinion, I repeat that upon a demurrer to evidence, in determining facts from evidence, where there is grave doubt, those inferences and conclusions most favorable to the demurree will be adopted; and, unless there is decided preponderance of probability or reason against the inference that might be made in favor of the demurree, such inference ought to be made in his favor; and if the evidence is such that, if there were a verdict in his favor, the court ought not to set it aside, then, on such demurrer, the court ought to give judgment in his favor. Speaking for myself, I do not think that Acts 1891, c. 100 (Code 1891, c. 131, s. 9) relates to demurrer to evidence. It was not designed to revolutionize the law of demurrer to evidence by reversing the rule that the demurrant waives his oral evidence contradicted by evidence of his adversary; and my reasons for this opinion are (1) that, before that act, all evidence upon such demurrer was certified, and hence the statute was not needed to bring up evidence in that instance; and (2) because, by demurring, the demurrant takes the case from the jury, and deprives his adversary of the right to have it pass on the evidence contradicting his evidence, including the credibility of witnesses. To hold that he gives up no evidence enables demurrant, at will, to take the case from the jury, and have the court to give him full benefit of evidence that is contradicted, which a jury would have discredited or deemed of little effect. Did this act mean to make a jury out of a court as to conflicting evidence on a demurrer to evidence? I think not. Hence, I think, section 4 of syllabus in *Mapel* v. *John*, 42 W. Va. 30 (24 S. E. 608) saying the demurrant waives no part of his evidence, is not tenable. Some may regard it peculiarly hard on

railroads to hold them responsible for killing children on the track, on the theory that they own and should have absolute control of their track; but if any of us traveling an ordinary highway, or a farmer in his own field, were to drive a vehicle over a child when he could have been seen, and the injury avoided, the person doing the injury would be liable.

As to imputed negligence of the father: We do not regard the facts as sufficient to debar his recovery, and I shall add nothing as to that to what is said in the original opinion. The facts, therefore, do not squarely raise that question; and, where neither party can be affected one way or the other by its decision, we need not discuss the question. _Stribling_ v. _Coal Co._, 31 W. Va. 82 (5 S. E. 321).

## CHARLESTON.

